Bruce Malcolm GRAS, Plaintiff,

v.

The Honorable Harold A. STEVENS, Presiding Justice of the Supreme Court of the State of New York, Appellate Division, First Judicial Department and all the Justices thereof, et al., Defendants.

No. 76 Civ. 9–C.L.B.

United States District Court,
S. D. New York.

May 6, 1976.

Deyan Ranko Brashich, New York City (Brashich, Finley & Postel, New York City, of counsel), for plaintiff.

Vincent J. Malone, New York City (Parker, Duryee, Zunino, Malone & Carter, New York City, of counsel), for defendant Linda Gras.

Michael P. Fogarty, Asst. Atty. Gen., New York City (Louis J. Lefkowitz, Atty. Gen. of the State of New York, New York City, of counsel), for defendants other than Linda Gras.

Before FRIENDLY, Circuit Judge, and BONSAL and BRIEANT, District Judges.

FRIENDLY, Circuit Judge:

This action, wherein federal jurisdiction is predicated on the Civil Rights Act, 42 U.S.C. § 1983 and its jurisdictional implementation, 28 U.S.C. § 1343(3),[1] concerns § 237 of the Domestic Relations Law of New York.

---

1. The complaint and amended complaint also cite the Federal Declaratory Judgment Act, 28 U.S.C. § 2201. Decisions too numerous to cite have held that this is not an independent basis of federal jurisdiction. See Supp. 6A Moore, Federal Practice ¶ 57.23, at 64.

The complaint alleged that plaintiff Bruce Malcolm Gras had instituted an action for divorce in the Supreme Court of New York County against his wife, Linda Gras. They were married on October 21, 1963 in Detroit, Michigan, and have one child who is now eleven years old, but have lived separate and apart since December, 1975. Under § 237(a) of the Domestic Relations Law, Mrs. Gras would be entitled to apply to the New York court for an order requiring Mr. Gras "to pay such sum or sums of money to enable the wife to carry on or defend the action or proceeding as, in the court's discretion, justice requires, having regard to the circumstances of the case and of the respective parties." There is no provision entitling a husband to make such an application against a wife. Mr. Gras asked that the court declare the statute to be in violation of the Federal Constitution as denying him the equal protection of the laws and to enjoin the defendants from directing any payment to Mrs. Gras. Judge Brieant, to whom the case was referred, sought and obtained the convocation of a three-judge court, 28 U.S.C. §§ 2281 and 2284. On March 17, 1976, the day after oral argument on plaintiff's motion, Mrs. Gras filed an answer in the New York divorce action asserting counterclaims for divorce or, in the alternative, for separation and seeking "counsel fees as and for the defense of [the divorce] action and the prosecution of Defendant's counterclaims, together with costs and disbursements." So far as we are aware, no motion for counsel fees has yet been made, and it is wholly uncertain how, apart from constitutional questions, any such motion would be decided.

The defendants in the complaint as amended are Presiding Justice Stevens of the Appellate Division of the Supreme Court of the State of New York for the First Department (in which New York County is located), all the Justices of the Supreme Court of the State of New York, the State of New York, Governor Carey, Attorney General Lefkowitz, and Mrs. Gras. All parties have moved for summary judgment. Defendants contend that the statute does not violate the equal protection clause since the differing treatment between husbands and wives is based upon the common law and upon a "reasonable distinction" considered by the legislature. See *Kahn v. Shevin,* 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974).

Neither the amended complaint nor any papers subsequently submitted makes any attempt to show on what basis plaintiff has a controversy justiciable under the Civil Rights Act with respect to any of the defendants. Somewhat incredibly, neither the Attorney General nor counsel for Mrs. Gras has raised the issue. However, the court is bound to consider whether there is the "exigent adversity" which is an essential condition precedent to federal court adjudication. See *Poe v. Ullman,* 367 U.S. 497, 506, 81 S.Ct. 1752, 1757, 6 L.Ed.2d 989, 997 (1961).

■ We begin by eliminating the State as a defendant since it is not a "person" within the Civil Rights Act, *Monroe v. Pape,* 365 U.S. 167, 187–92, 81 S.Ct. 473, 484–86, 5 L.Ed.2d 492, 505–07 (1961); *City of Kenosha v. Bruno,* 412 U.S. 507, 513, 93 S.Ct. 2222, 2226, 37 L.Ed.2d 109, 116 (1973); *Curtis v. Everette,* 489 F.2d 516 (3 Cir. 1973), *cert. denied sub nom., Smith v. Curtis,* 416 U.S. 995, 94 S.Ct. 2409, 40 L.Ed.2d 774 (1974); *Williford v. People of California,* 352 F.2d 474 (9 Cir. 1965); *United States ex rel. Lee v. People of the State of Illinois,* 343 F.2d 120 (7 Cir. 1965); *Collins v. Moore,* 441 F.2d 550, 551 (5 Cir. 1971). With respect to most of the other defendants we find guidance in the Second Circuit's recent discussion of a rather similar attempt to invoke the declaratory judgment and injunctive powers of federal courts in an action challenging the two-year durational residency requirements for instituting an action for divorce under § 230(5) of the New York Domestic Relations Law. *Mendez v. Heller,* 380 F.Supp. 985 (E.D.N. Y.1974) (three-judge court), vacated and remanded for the entry of a fresh decree to permit an appeal to the Court of Appeals on the issue of justiciability, 420 U.S. 916, 95 S.Ct. 1107, 43 L.Ed.2d 386 (1975), *aff'd sub*

*nom. Roman v. Heller,* 530 F.2d 457 (2 Cir. 1976), slip opinions 1841.

■ The portion of the opinion of the Court of Appeals concerning the inappropriateness of designating Justice Heller as a defendant in that case applies equally to the designation of Presiding Justice Stevens of the Appellate Division, First Department, and all the Justices of the New York Supreme Court in this one. Action which any of these Justices may take on an application by Mrs. Gras under § 237(a) will be in their capacity as judges who, like us, have taken an oath or affirmation to support the Constitution of the United States Article IV. If Mr. Gras is right in thinking that § 237(a) of the Domestic Relations Law offends the equal protection clause of the Fourteenth Amendment, they are as bound to strike it down as we are.[2] Cases sustaining actions against Justices of the Appellate Division under the Civil Rights Act concerning rules for admission to the bar prescribed by them, e. g., *Law Students Civil Rights Research Council, Inc. v. Wadmond,* 299 F.Supp. 117, 123 (S.D.N.Y.1969) (three-judge court), aff'd without discussion of this point, 401 U.S. 154 (1971), or their institution of a disciplinary proceeding against a lawyer, *Erdmann v. Stevens,* 458 F.2d 1205, 1207–08 (2 Cir.), *cert. denied,* 409 U.S. 889, 93 S.Ct. 126, 34 L.Ed.2d 147 (1972), are readily distinguishable; see also *Hadnott v. Amos,* 394 U.S. 358, 89 S.Ct. 1101, 22 L.Ed.2d 336 (1969). As said in the *Law Students* case, 299 F.Supp. at 123:

> Plaintiffs do not challenge a state court's disposition of an individual case, but attack as "overly broad and vague regulations of expression," the rules and regulations promulgated and administered by the appellate divisions and their dele-

gates. The alleged infringement of First Amendment rights of law students cannot be dissipated by the processing of particular individuals' applications for admission to the bar. (Citations omitted.)[3]

■ We likewise have little to add to the Court of Appeals' discussion of the impropriety of naming the Attorney General as a defendant. The Attorney General has no interest in the outcome of a divorce suit and no duty to enforce any order made in it. His position with respect to this controversy is wholly different from that of the Attorney General of Minnesota in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), who was implicitly charged by statute with the duty of collecting an allegedly unconstitutional tax, or of a local prosecutor who is charged with the duty of enforcing an allegedly unconstitutional criminal statute. *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The facts that the Attorney General is bound to support the constitutionality of challenged New York statutes, N.Y. Exec.Law § 71, and to defend actions in which the state is "interested," *id.* § 63(1), do not overcome the point that when plaintiff began this action, the Attorney General was not threatening to deprive him of anything. Cf. *Ex parte Young, supra,* 209 U.S. at 131, 28 S.Ct. at 445, 52 L.Ed. at 717.

■ Since the complaint in *Roman* did not name the Governor as a defendant, the opinion of the Court of Appeals does not aid us in deciding with respect to him. The argument for plaintiff would be that the Governor is charged by Article IV, § 3, of the New York Constitution to "take care that the laws are faithfully executed," and that if a New York Supreme Court Justice should make an award to Mrs. Gras under

---

2. Indeed, counsel for Mr. Gras has called our attention to a decision in which a judge of the New York Family Court has sustained a similar contention made by him with respect to § 438 of the Family Court Act, *In the Matter of a Proceeding for Support under Article 4 of the Family Court Act, Marcia D. v. Donald D.,* decided February 18, 1976 (Kram, J.).

3. In *Gerstein v. Pugh,* 420 U.S. 103, 107 n.8, 95 S.Ct. 854, 859, 43 L.Ed.2d 54, 61 (1975), the

Court noted that the complaint had named as defendants "justices of the peace and judges of small-claims courts, who were authorized to hold preliminary hearings in criminal cases . . . .," but were being excluded from doing so by the Florida procedures under attack. The Court did not pass on whether they were properly named since the complaint named as a defendant Gerstein, the Dade County prosecutor, who was enforcing the challenged procedures, and he alone petitioned for certiorari.

§ 237(a) despite plaintiff's constitutional objection and this should be affirmed by New York's higher courts, it would then become the Governor's duty to see to it that "the whole power of the state will be put forth, if necessary"[4] to enforce it. The argument would continue that although *Fitts v. McGhee,* 172 U.S. 516, 530, 19 S.Ct. 269, 274, 43 L.Ed. 535, 542 (1899), held that the ban of the Eleventh Amendment could not be avoided by suing state officers in the absence of "any special relation" on their part "to the particular statute alleged to be unconstitutional," this was altered by the statement in *Ex parte Young, supra,* 209 U.S. at 157, 28 S.Ct. at 453, 52 L.Ed. at 728:

> The fact that the state officer, by virtue of his office, has some connection with the enforcement of the act, is the important and material fact, and whether it arises out of the general law, or is specially created by the act itself, is not material so long as it exists.

In our view this would extend *Ex parte Young* beyond anything which the Supreme Court intended or has subsequently held. The statement just quoted followed a more general one:

> In making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party.

The cases that have applied the statement first quoted have been concerned with the enforcement of programs, civil or criminal, dealing with the relations between the state and the individual—the regulation of railroad rates as in *Ex parte Young* itself; the forfeiture of civil rights upon imprisonment, *Johnson v. Rockefeller,* 58 F.R.D. 42, 45–46 (S.D.N.Y.1972), *aff'd sub nom.; Butler v. Wilson,* 415 U.S. 953, 94 S.Ct. 1479, 39 L.Ed.2d 569 (1974); the rules determining access to a position on the ballot, *Socialist Workers Party v. Rockefeller,* 314 F.Supp.

984 (S.D.N.Y.) (three-judge court), *aff'd,* 400 U.S. 806, 91 S.Ct. 65, 27 L.Ed.2d 38 (1970); and water control, *City of Altus v. Carr,* 255 F.Supp. 828, 834–37 (W.D.Texas) (three-judge court), *aff'd,* 385 U.S. 35, 87 S.Ct. 240, 17 L.Ed.2d 34 (1966). Even in such cases there is an opposing view as to the propriety of joining a governor as a defendant, see *Coon v. Tingle,* 277 F.Supp. 304, 306–07 (N.D.Ga.1967) (three-judge court) (statute prohibiting employment of females in liquor stores); *Oliver v. Board of Education,* 306 F.Supp. 1286, 1288 (S.D.N.Y. 1969) (election procedures for local board of education). However all this may be, we know of no case in which the general duty of a governor to enforce state laws has been held sufficient to make him a proper party defendant in a civil rights action attacking the constitutionality of a state statute concerning matrimonial or other private civil actions.

■ The only remaining defendant is Mrs. Gras. It is true enough that "To act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents," *United States v. Price,* 383 U.S. 787, 794, 86 S.Ct. 1152, 1156, 16 L.Ed.2d 267, 272 (1966), quoted and relied upon in *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142, 150 (1970). But we know of no authority that one private person, by asking a state court to make an award against another which is claimed to be unconstitutional, is violating 42 U.S.C. § 1983. To the contrary, our Court of Appeals has squarely held that "merely by holding its courts open to litigation of complaints [a state] does not clothe persons who use its judicial processes with the authority of the state in the sense [required by § 1343]." *Stevens v. Frick,* 372 F.2d 378, 381 (2 Cir.), *cert. denied,* 387 U.S. 920, 87 S.Ct. 2034, 18 L.Ed.2d 973 (1967); see also *Henry v. First Nat'l Bank of Clarksdale,* 444 F.2d 1300, 1309–10 (5 Cir. 1971), *cert. denied,* 405 U.S. 1019, 92 S.Ct. 1284, 31

---

4. Holmes, The Path of the Law, in Collected Legal Papers 167 (1920).

L.Ed.2d 483 (1972), and the many cases cited.

The analysis in *Roman v. Heller, supra,* thus requires dismissal of the complaint. But this conclusion is also demanded on other grounds. The civil rights statute, 42 U.S.C. § 1983, provides that a person violating it "shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." Here Mr. Gras is seeking an injunction, a remedy granted in a "suit in equity," or a declaratory judgment under 28 U.S.C. § 2201.

■ There is no occasion for a declaratory judgment in this case. As said in *Poe v. Ullman, supra,* 367 U.S. at 506, 81 S.Ct. at 1757, 6 L.Ed.2d at 998, "the declaratory judgment device . . . does not permit litigants to invoke the power of this [c]ourt to obtain constitutional rulings in advance of necessity." Plaintiff does not claim that the possibility of an award against him under § 237(a) deterred him from suing for divorce and such a contention would be far fetched in the extreme. In fact he had already instituted the divorce suit before he began this action, and the constitutionality of § 237(a) can be fully adjudicated there. It is established that in the exercise of discretion a federal court should normally deny a declaratory judgment where the issues raised may be fully adjudicated in a suit pending in a state court at the time the federal declaratory judgment action is instituted. See 6A Moore, Federal Practice ¶ 57.08[6–1]. Indeed, in *American Home Assurance Co. v. Insular Underwriters Corp.,* 494 F.2d 317 (1 Cir. 1974), and in *Paskowski v. Paskowski,* 361 F.Supp. 981 (E.D.N.Y.1973), federal courts denied declaratory judgments, deferring to state proceedings begun *after* the filing of the federal complaint. See also *Kister v. Ohio Bd. of Regents,* 365 F.Supp. 27 (1973), aff'd 414 U.S. 1117, 94 S.Ct. 855, 38 L.Ed.2d 747 (1974), and *Brillhart v. Excess Ins. Co. of America,* 316 U.S. 491, 494–95, 62 S.Ct.

1173, 1175–76, 86 L.Ed. 1620, 1624–25 (1942).

■ When § 1983 authorized a "suit in equity," this carried the gloss that centuries had put upon that phrase. Notable in that connection was the historic principle embodied in § 16 of the First Judiciary Act, 1 Stat. 82 (1789), and later in Rev.Stat. § 723 and 28 U.S.C. § 384 (1940 ed.), that suits in equity shall not be sustained in courts of the United States "in any case where a plain, adequate and complete remedy may be had at law."[5] In *Potwora v. Dillon,* 386 F.2d 74, 76–78 (2 Cir. 1967), the Court of Appeals for this circuit concluded, in an opinion by the writer, that a plaintiff seeking an injunction under 42 U.S.C. § 1983 must show that he had no adequate legal remedy in a state as well as in a federal court. The court cited *Matthews v. Rodgers,* 284 U.S. 521, 526, 52 S.Ct. 217, 220, 76 L.Ed. 447, 452 (1932), where Mr. Justice Stone said:

> If the remedy at law is plain, adequate and complete, the aggrieved party is left to that remedy in the state courts, from which the cause may be brought to this Court for review if any federal question be involved, Jud.Code § 237, or to his suit at law in the federal courts if the essential elements of federal jurisdiction are present.

Reviewing the then recent decisions in *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *McNeese v. Board of Education,* 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); and *Dombrowski v. Pfister,* 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), the Court of Appeals concluded that this general principle of federal equity applied in actions under the Civil Rights Act. It quoted Mr. Justice Douglas' frequently cited statement in *Monroe v. Pape,* 365 U.S. at 183, 81 S.Ct. at 482, 5 L.Ed.2d at 503:

> The federal remedy is supplementary to the state remedy, and the latter need not

---

**5.** While the statute was repealed as obsolete in view of the merger of law and equity, 62 Stat. 992 (1948), the principle remains intact. Cf.

*Stainback v. Mo Hock Ke Lok Po,* 336 U.S. 368, 382 at n.26, 27, 69 S.Ct. 606, 614, 93 L.Ed. 741, 751 (1949).

be first sought and refused before the federal one is invoked.

However, it noted that

Monroe v. Pape was an action for damages and the quoted statement must be read in that light.

The court did not believe that the Supreme Court intended to depart from the "historic rule" of federal equity to which we have referred.

■ We find nothing in subsequent Supreme Court decisions that would cast doubt on the correctness of the conclusion in Potwora v. Dillon. While Mitchum v. Foster, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972), held that the Civil Rights Act was an exception to the anti-injunction statute, 28 U.S.C. § 2283, the Court explicitly stated that it did "not question or qualify in any way the principles of equity, comity, and federalism that must restrain a federal court when asked to enjoin a state court proceeding." Id. at 243, 92 S.Ct. at 2162, 32 L.Ed.2d at 718. Three Justices wrote a special concurrence to underscore this. Id. at 243–44, 92 S.Ct. at 2162–63, 32 L.Ed.2d at 717–18. In O'Shea v. Littleton, 414 U.S. 488, 502, 94 S.Ct. 669, 679, 38 L.Ed.2d 674, 687 (1974), the Court cited the availability of state procedures as a prime ground for refusing an injunction against future prosecutions under the Civil Rights Act.

■ We have been pointed to nothing that would indicate that opposing any motion Mrs. Gras may make under § 237(a) in the New York County divorce proceeding is not a "plain, adequate and complete remedy at law." If plaintiff's attacks on the constitutionality of the statute should fail in the New York courts, an appeal to the Supreme Court would lie as a matter of right, 28 U.S.C. § 1257(2). See Huffman v. Pursue, Ltd., 420 U.S. 592, 605, 95 S.Ct. 1200, 1208, 43 L.Ed.2d 482, 492 (1975). We do not regard it as a significant basis for distinction that here, in contrast to Potwora, the

legal remedy is by way of defense to a claim to be asserted in the state action already instituted. Finally, although the Court of Appeals has recently said that a § 1983 plaintiff "may choose the federal court as the preferred forum for the assertion of constitutional claims," Lombard v. Board of Education, 502 F.2d 631, 636 (2 Cir. 1974), cert. denied, 420 U.S. 976, 95 S.Ct. 1400, 43 L.Ed.2d 656 (1975), this was in a context where the state remedy, a New York Article 78 proceeding, was not a conventional remedy at law but derived rather from equity and the prerogative writs.

If this is not enough, we would add that, as a matter of comity, we would decline under Huffman v. Pursue, supra, see also Anon. v. Association of the Bar of City of N. Y., 515 F.2d 427 (2 Cir.), cert. denied, 423 U.S. 863, 96 S.Ct. 122, 46 L.Ed.2d 92, 44 U.S.L.W. 3204 (1975), to interfere with the orderly determination of any claim concerning the constitutionality of § 237(a) in the New York divorce proceeding. As Judge Oakes said, concurring in Roman v. Heller, supra, slip opinions at 1848, domestic relations law is an area where federal courts "should be especially careful to avoid unnecessary or untimely interference with the State's administration of its domestic policies." [6] A special reason for non-interference here is that if a court should be convinced that § 237(a) is an unconstitutional discrimination on the ground of sex, it will then have to decide whether the cure is to strike down the rights now accorded to wives by that section or to eliminate the limitation that confines its benefits to them. This task is better left to the courts of New York.

In light of our holding we are not obliged to consider the contention that plaintiff has no standing since there is no showing that in view of his financial circumstances, as compared to that of Mrs. Gras, he would be entitled to an award even if § 237(a) were sex-blind.

---

6. See also Judge Oakes' statement in Kamhi v. Cohen, 512 F.2d 1051, 1056 (2 Cir. 1975):

The policy of our court will remain, the case being otherwise equal in equity, to keep our federal hands off actions which verge on the matrimonial, or impinge on the matrimonial jurisdiction of the state courts.

Judgment will be entered dismissing the complaint. Of course, this is without prejudice to Mr. Gras' asserting his position in the New York courts.