**ARTIST M., et al., Plaintiffs,**

v.

**Gordon JOHNSON, et al., Defendants.**

No. 88C10503.

United States District Court,
N.D. Illinois, E.D.

July 25, 1989.

Patrick Murphy, Julie L. Biehl, Susan Tone Pierce, and Michael G. Dsida, Office of the Public Guardian, Chicago, Ill., for plaintiffs.

Susan Getzendanner, Christina Tchen, Charles Smith, Sp. States Attys., Skadden, Arps, Slate, Meagher & Flom, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

In December 1988 plaintiffs filed this action as a class action seeking declaratory and injunctive relief pursuant to the Adoption Assistance and Child Welfare Act of 1980 ("AAA"), 42 U.S.C. §§ 620–628, 670–679—either under 42 U.S.C. § 1983 ("Section 1983") or perhaps via direct action—and under the Due Process Clause. Plaintiffs simultaneously filed a Motion for Preliminary Injunction and a Motion for Class Certification.

Upon presentation of plaintiffs' motions, defendants concurred in the propriety of certifying two classes of plaintiffs:

Class A: Children who are or will be the subjects of neglect, dependency or abuse petitions filed in the Circuit Court of Cook County, Juvenile Division ("Juvenile Court"), who are or will be in the custody of Department of Children and Family Services ("DCFS") or in a home under DCFS supervision by an order of Juvenile Court and who are now or will be without a DCFS caseworker for a significant period of time.

Class B: Children who are or will be the subjects of neglect, dependency or abuse petitions filed in Juvenile Court who are or will be placed in DCFS' custody and who are or will be without a DCFS caseworker for a significant period of time.

This Court entered a memorandum order certifying both classes, granting plaintiffs' request for expedited discovery and setting plaintiffs' Motion for Preliminary Injunction for an early evidentiary hearing. After that hearing (the "Hearing") was held, with extensive evidence presented by both sides, the parties presented their post-Hearing submissions.

Defendants in this action are DCFS Director Gordon Johnson ("Johnson") and DCFS Guardianship Administrator Gary Morgan ("Morgan").[1] DCFS is the state agency charged with, among other things, investigating allegations of child abuse and neglect throughout Illinois and caring for children and families who are the victims of child abuse and neglect. This action is concerned solely with cases in the Cook County Region.

Plaintiffs complain that DCFS has a policy and practice of failing promptly to assign a caseworker to court cases following the issuance of a temporary custody or protective (or supervision) order and of failing promptly to reassign court cases when a caseworker goes on leave, is terminated or resigns. Plaintiffs claim that alleged policy and practice violates both AAA and the Due Process Clause.

This Court has previously deferred issuance of its findings of fact and conclusions of law for two reasons impacting importantly on the availability and propriety of preliminary injunctive relief:

1. the known imminence of post-Hearing Supreme Court decisions in key areas

---

**1.** Morgan testified that although he is named personally by the Juvenile Court as the custodian of children placed in the temporary custody of DCFS, day-to-day decisions regarding those children are made by DCFS personnel who are designated agents of the Guardianship Administrator and who are located in the Area Offices, Division of Child Protection, Interim Service Teams, Emergency Services Center and other units directly responsible for serving children in the care of DCFS. Morgan has no line authority over those persons, nor does he have any responsibility for developing generally any policies with respect to the care of children in DCFS' custody, or specifically with respect to the assignment of caseworkers. Accordingly, although named as a defendant, Morgan does not have any responsibility for the alleged practices and policies challenged in this action.

affecting the core of plaintiffs' claims and

2. DCFS testimony at the Hearing as to its then recent adoption and ongoing implementation of a restructuring plan to address caseworker assignment delays directly.

Now the end of the Term has come, the Supreme Court decisions have indeed been handed down, and it appears that they may perhaps have gutted much if not all of plaintiffs' potential predicates for obtaining relief. This memorandum opinion and order addresses the case in its present posture.

As for plaintiffs' claim under Section 1983, *Will v. Michigan Department of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989) has now announced that no action against a state or against its officials qua officials (the capacity in which Johnson is in fact sued here) can proceed under that statute:

> We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983.

To be sure, *Will, id.* 109 S.Ct. at 2311 n. 10 (citations omitted) tempers that seemingly unqualified pronouncement with an "of course" hedge that draws upon the familiar fiction that informs *Ex parte Young* and its progeny—that a State cannot act unconstitutionally, so that any state official who violates anyone's constitutional rights is perforce stripped of his or her official character:

> Of course a State official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because "official-capacity actions for prospective relief are not treated as actions against the State." ... This dis-

tinction is "commonplace in sovereign immunity doctrine," ... and would not have been foreign to the 19th-century Congress that enacted § 1983. ...

But in this instance that stated limitation on the newly-announced *Will* ruling marks a need for further inquiry rather than the end of the matter.

As stated at the outset of this opinion, plaintiffs ask for declaratory and injunctive relief. But the injunction they seek is not the garden-variety limited restraint on an individual defendant's conduct. Instead it calls for mandatory relief that would, if granted, impose a major financial burden on the State of Illinois. As *Edelman v. Jordan,* 415 U.S. 651, 666, 94 S.Ct. 1347, 1357, 39 L.Ed.2d 662 (1974) said: [2]

> We do not read *Ex parte Young* or subsequent holdings of this Court to indicate that any form of relief may be awarded against a state officer, no matter how closely it may in practice resemble a money judgment payable out of the state treasury, so long as the relief may be labeled "equitable" in nature.

If the reason the State cannot be sued under Section 1983 is indeed the bar against invading the sovereign's fisc without its consent, that identical consequence would flow from the decree sought by plaintiffs, though nominally injunctive in form and though nominally issued against state official Johnson rather than the State itself. It is of course true that for Eleventh Amendment purposes the Court has distinguished between retrospective relief (held impermissible) and prospective relief (held permissible), stating in *Quern v. Jordan,* 440 U.S. 332, 337, 99 S.Ct. 1139, 1143, 59 L.Ed.2d 358 (1979) (citations and foot-

---

**2.** Although the *Edelman* discussion (like that in *Quern* [cited next in the text] and all the other cases treating with the issue now under consideration) occurs not in a Section 1983 case but in the Eleventh Amendment context, Justice Brennan's dissenting opinion for four Justices in *Will,* 109 S.Ct. at 2312 seems accurate in stating:

> Like the guest who wouldn't leave, however, the Eleventh Amendment lurks everywhere in today's decision and, in truth, determines its outcome.

But it is not necessary for today's purposes to choose sides between the majority and minority opinions in *Will.* What is most significant is that *Edelman* and like cases draw on the notion of the State as sovereign, the identical concept that the Court majority in *Will* relies on in finding the State cannot be a Section 1983 "person."

note omitted): [3]

In *Edelman* we reaffirmed the rule that had evolved in our earlier cases that a suit in federal court by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment.... We rejected the notion that simply because the lower court's grant of retroactive benefits had been styled "equitable restitution" it was permissible under the Eleventh Amendment. But we also pointed out that under the landmark decision in *Ex parte Young*, 209 U.S. 123 [28 S.Ct. 441, 52 L.Ed. 714] (1908), a federal court, consistent with the Eleventh Amendment, may enjoin state officials to conform their future conduct to the requirements of federal law, even though such an injunction may have an ancillary effect on the state treasury.... The distinction between that relief permissible under the doctrine of *Ex parte Young* and that found barred in *Edelman* was the difference between prospective relief on one hand and retrospective relief on the other.

But will that Eleventh Amendment parallel extend chapter and verse to Section 1983? Is form to prevail over substance, so that this action will lie under Section 1983 in accordance with *Will's* n. 10 exception? Or does the real-world major financial impact of the relief demanded by plaintiffs mean that *Will's* general rule barring Section 1983 actions against the State and its officials as surrogates for the State is to control here?

If the latter is the proper reading of *Will*, it would sap of any real force the cases on which plaintiffs have placed their principal reliance for purposes of AAA-related relief: *L.J. v. Massinga*, 838 F.2d 118 (4th Cir.1988); *Lynch v. Dukakis*, 719 F.2d 504 (1st Cir.1983); and see *Del A. v. Edwards*, 855 F.2d 1148 (5th Cir.1988). Both *L.J.*, 838 F.2d at 123 and *Lynch*, 719 F.2d at 509–10 held AAA privately enforceable under Section 1983, and to that extent they

would clearly be overturned by such a construction of *Will*. As for *Del A.*, the Court of Appeals there vacated the panel opinion and granted rehearing en banc (862 F.2d 1107 (5th Cir.1988)), following which the case has been dismissed February 28, 1989. And of course *Will* would then moot defendants' reliance on *Spielman v. Hildebrand*, 873 F.2d 1377, 1386 (10th Cir.1989), which had expressed "considerable doubt whether [AAA] confers any substantive rights that can be the subject of an action for damages under section 1983."

Finally, if *Will* were to foreclose plaintiffs' access to Section 1983, their right to relief in this action would have to stem—if at all—from one or both of (1) an implied direct private action for defendants' claimed violations of AAA or (2) plaintiffs' stated claim under the Due Process Clause. Each of those alternatives bears examination here.

AAA unquestionably does not by its terms afford parties in plaintiffs' situation an *express* cause of action. And plaintiffs have really not responded to defendants' Proposed Conclusion 8, which points to the increasingly restrictive reading that the Supreme Court has given to *implied* private actions—a much more demanding standard than *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) was initially thought to have established. Most recently our Court of Appeals has spoken to that issue in *King v. Gibbs*, 876 F.2d 1275 at 1280 (7th Cir.1989):

The Supreme Court, in *Cort v. Ash*, set out a four-part test to determine whether a private right of action should be implied from a statute:

First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted," ...? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?

---

**3.** *Will*, 109 S.Ct. at 2309 n. 6 rejects one of the petitioner's arguments there as "no more than an attempt to have this Court reconsider *Quern*

*v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), which we decline to do."

And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

422 U.S. at 78 [95 S.Ct. at 2088] (citations omitted).

In its recent pronouncements, the Court has reaffirmed the use of the *Cort* test but has also made it clear that the principal focus is on the second of the *Cort* factors—whether the legislature intended to create a private cause of action. *See Cannon v. University of Chicago,* 441 U.S. 677 [99 S.Ct. 1946, 60 L.Ed.2d 560] (1979); *Touche Ross & Co. v. Redington,* 442 U.S. 560, 568 [99 S.Ct. 2479, 2485, 61 L.Ed.2d 82] (1979). The first and third of the *Cort* factors are aids in determining that intent, *Touche Ross,* 442 U.S. at 575–76 [99 S.Ct. at 2488–89]; *see also* P. Bator, D. Meltzer, P. Mishkin, D. Shapiro, *The Federal Courts and the Federal System* 946 (1988), and, by negative implication, it is unclear whether the fourth *Cort* factor—whether the cause of action is generally thought of as a matter of state concern—has any continuing significance. *But see Merrill Lynch, Pierce, Fenner & Smith v. Curran,* 456 U.S. 353, 393 [102 S.Ct. 1825, 1847, 72 L.Ed.2d 182] (1982) (Court noted that fourth *Cort* factor favored implying private right of action under a provision of the Commodities Exchange Act.). In sum, unless a congressional intent to create the right of action "can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist." *Northwest Airlines, Inc. v. Transport Workers Union,* 451 U.S. 77, 94 [101 S.Ct. 1571, 1582, 67 L.Ed.2d 750] (1981).

At least until otherwise demonstrated, then, it must be considered that AAA provides plaintiffs no direct ticket of entry to this federal court.

As for plaintiffs' claim sounding in due process, *DeShaney v. Winnebago County Department of Social Services,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989)—albeit in a different context—has most recently reconfirmed the restricted scope of States' obligations to their citizens under notions of substantive due process. *DeShaney* emphasized the nature of the Due Process Clause as a charter of negative liberties rather than as an affirmative guaranty.

To be sure, in the course of its *DeShaney* discussion the Court reconfirmed the existence of "certain limited circumstances [in which] the Constitution imposes on the State affirmative duties of care and protection with respect to particular individuals" (*id.,* 109 S.Ct. at 1004–05, and see generally the entire discussion in Part II of the opinion, *id.* at 1002–07). But *DeShaney* specifically did not retreat from the principles announced in the Court's two decisions during the October 1985 Term delimiting the scope of substantive due process (*id.* at 1003):

Like its counterpart in the Fifth Amendment, the Due Process Clause of the Fourteenth Amendment was intended to prevent government "from abusing [its] power, or employing it as an instrument of oppression," *Davidson v. Cannon,* [474 U.S. 344] at 348, 106 S.Ct. [668], at 670 [88 L.Ed.2d 677] [1986]; see also *Daniels v. Williams,* [*id.*] [474 U.S. 327] at 331, 106 S.Ct. [662], at 665 [88 L.Ed.2d 662] [1986] (" ' "to secure the individual from the arbitrary exercise of the powers of government," ' " and "to prevent governmental power from being 'used for purposes of oppression' ") (internal citations omitted); *Parratt v. Taylor,* 451 U.S. 527, 549, 101 S.Ct. 1908, 1919, 68 L.Ed.2d 420 (1981) (Powell, J., concurring in result) (to prevent the "affirmative abuse of power"). Its purpose was to protect the people from the State, not to ensure that the State protected them from each other.

Both *Daniels,* 474 U.S. at 331, 106 S.Ct. at 665 (emphasis in original) ("Historically, this guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property") and *Davidson, id.* 474

U.S. at 347, 106 S.Ct. at 670 ("In *Daniels*, we held that the Due Process Clause of the Fourteenth Amendment is not implicated by the lack of due care of an official causing unintended injury to life, liberty, or property") emphasized that the harm complained of must have been *intended* by the public official, rather than negligently inflicted. And because *DeShaney* dealt with petitioners to whom the State did not owe the special level of responsibility that runs in favor of persons in state custody, the Court was not called on to specify whether the *Daniels–Davidson* standard of *intentionally* inflicted harm or some lesser benchmark was required in the "special relationships" situations discussed in Part II of the opinion. As to persons in plaintiffs' position, then, a double question exists: whether they stand in the "special relationships" category and, if so, what standard is prescribed by the requirements of substantive due process.

In summary, the posture of plaintiffs' claims appears to be this:

1. Input is required from both sides as to whether Section 1983 (assuming arguendo that DCFS were held to have violated AAA) has been rendered unavailable to plaintiffs by *Will*.

2. Unless plaintiffs can demonstrate otherwise, any contentions they have advanced as to an implied private cause of action created by AAA itself must be rejected for lack of subject matter jurisdiction.

3. Any contention that plaintiffs seek to ground in the Due Process Clause depends on the standard applicable to such contention—whether that of intentionally inflicted harm (a standard that plaintiffs clearly cannot meet) or something less (a question whose answer may depend on what that "something less" is).[4]

Both sides are directed to file contemporaneous supplemental submissions on those legal issues in this Court's chambers on or before August 4, 1989. Because it may

also be relevant to determine what has happened since the Hearing to the plan described in defendants' Hearing testimony, defendants are ordered to include a brief statement of the current posture of that plan as part of their submission. This action is set for a status hearing at 9 a.m. August 15, 1989 to discuss (1) whether anything further will be required in the latter respect and also (2) the ultimate disposition of the preliminary injunction motion.

---

4. Both sides should also review our Court of Appeals' two-week-old en banc decision in *Easter House v. Felder*, 879 F.2d 1458 (7th Cir.1989). *Easter House* cuts such a wide swath out of

Section 1983's coverage, and it is so new, that its potential implications even for a substantive due process claim such as that advanced by plaintiffs here should be looked at.