Grace WEINSTEIN, Plaintiff,

v.

James EDGAR, in his capacity as Governor of the State of Illinois; Illinois State Board of Education; Robert Leininger, in his capacity as Superintendent of the Illinois State Board of Education; Cook County Board of Education; Richard J. Martwick, Dr., in his capacity as Superintendent of the Cook County Board of Education; Chicago Board of Education; Florence B. Cox, in her capacity as President of the Chicago Board of Education; and Chicago Public Schools, Acting General Superintendent, Defendants.

No. 93 C 1102.

United States District Court, N.D. Illinois, E.D.

July 7, 1993.

MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Grace Weinstein, a Chicago public school teacher, brings this action against Governor James Edgar, Robert Leininger in his capacity as Superintendent of the Illinois State Board of Education, and Florence B. Cox in her capacity as President of the Chicago Board of Education,[1] challenging the constitutionality of 105 ILCS 5/24–2, which designates Good Friday as a holiday on which public schools must be closed. Presently before the court is Governor Edgar's motion to dismiss for lack of subject matter jurisdiction and, as explained below, the motion is granted.

■ The gravamen of the instant motion to dismiss is that Governor Edgar is an improper party defendant. Edgar is named solely in his official capacity as the Governor of the State of Illinois and, although the Eleventh Amendment bars this court from assessing monetary damages against the

---

1. On April 20, 1993, pursuant to the doctrine of sovereign immunity embodied in the Eleventh Amendment of the United States Constitution, we dismissed from this action the Illinois State Board of Education. Additionally, upon motion by Weinstein, we dismissed the Cook County Board of Education and Dr. Richard J. Martwick on April 30, 1993.

Governor, he may be sued for prospective injunctive relief. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n. 10, 109 S.Ct. 2304, 2311 n. 10, 105 L.Ed.2d 45 (1989); *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 3106 n. 14, 87 L.Ed.2d 114 (1985); *Ex parte Young*, 209 U.S. 123, 159–160, 28 S.Ct. 441, 454, 52 L.Ed. 714 (1908); *MSA Realty Corp. v. State of Illinois*, 990 F.2d 288, 291 (7th Cir.1993). The rule embodied by *Ex parte Young* and its progeny is informed by a familiar fiction. This fiction, as recently recounted in *Artist M. v. Johnson*, 747 F.Supp. 446, 448 (N.D.Ill.1989), is premised on the notion that "a State cannot act unconstitutionally, so that any state official who violates anyone's constitutional rights is perforce stripped of his or her official character." The fictional nature of *Ex parte Young* has been noted by courts and commentators alike. *See, e.g., Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 104–05, 104 S.Ct. 900, 910, 79 L.Ed.2d 67 (1984); M. Redish, Federal Jurisdiction: Tensions in the Allocation of Judicial Power 193–204 (2d ed. 1990); Tribe, *Intergovernmental Immunities in Litigation, Taxation, and Regulation: Separation of Powers Issues in Controversies About Federalism*, 89 Harv.L.Rev. 682, 687 (1976). Nonetheless, the doctrine of *Ex parte Young* represents a necessary culmination arising from the struggle to harmonize the principles of the Eleventh Amendment with the need to promote the vindication of federal rights. *Pennhurst*, 465 U.S. at 105, 104 S.Ct. at 910; *see also* C. Wright, The Law of Federal Courts 292 (4th ed. 1983) ("the doctrine of *Ex parte Young* seems indispensable to the establishment of constitutional government and the rule of law.").

Implicit in the right to sue state officials for prospective injunctive relief, however, is the requirement that the state official bear "some connection" with the enforcement of the challenged statute:

> In making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party.

*Ex parte Young*, 209 U.S. at 157, 28 S.Ct. at 453. In *Fitts v. McGhee*, 172 U.S. 516, 19 S.Ct. 269, 43 L.Ed. 535 (1899), quoted extensively in *Ex parte Young*, the Court expounded on the requisite "connection" between the state officer and the challenged statute:

> There is a wide difference between a suit against individuals, holding official positions under a state, to prevent them, under the sanction of an unconstitutional statute, from committing by some positive act a wrong or trespass, and a suit against officers of a state merely to test the constitutionality of a state statute, in the enforcement of which those officers will act only by formal judicial proceedings in the courts of the state. In the present case, as we have said, neither of the state officers named held any special relation to the particular statute alleged to be unconstitutional. They were not expressly directed to see its enforcement. If, because they were law officers of the state, a case could be made for the purpose of testing the constitutionality of the statute, then the constitutionality of every act passed by the legislature could be tested by a suit against the governor and the attorney general, based upon the theory that the former, as the executive of the state, was, in a general sense, charged with the execution of all its laws, and the latter, as attorney general, might represent the state in litigation involving the enforcement of its statutes. That would be a very convenient way for obtaining a speedy judicial determination of questions of constitutional law which may be raised by individuals, but it is a mode which cannot be applied to the states of the Union consistently with the fundamental principle that they cannot, without their assent, be brought into any court at the suit of private persons.

*Id.* at 529–30, 19 S.Ct. at 274. Pursuant to this delineation of the connection requirement, it is apparent that Governor Edgar is not a proper party defendant through which Weinstein may challenge the constitutionality of 105 ILCS 5/24–2. As asserted by Wein-

stein, Governor Edgar's only connection to the enforcement of the challenged statute is derived from his general obligation "for the faithful execution of the laws," found in Article 5, § 8 of the Illinois Constitution. As the *Fitts* Court indicated, a theory of liability predicated on a governor's general obligations as the executive of the state is insufficient to avoid the consequences of the Eleventh Amendment. *See Akron Center for Reproductive Health v. Rosen,* 633 F.Supp. 1123, 1129–30 (N.D.Ohio), *appeal dismissed without opinion,* 805 F.2d 1033 (6th Cir. 1986); *Gras v. Stevens,* 415 F.Supp. 1148, 1152 (S.D.N.Y.1976); *Hatfield v. Williams,* 376 F.Supp. 212, 214 (N.D.Iowa 1974); *Ross v. Lucey,* 349 F.Supp. 264, 267 (E.D.Wis. 1972); *Coon v. Tingle,* 277 F.Supp. 304, 307 (N.D.Ga.1967); *see also Sherman v. Community Consol. Sch. Dist. 21,* 980 F.2d 437, 441 (7th Cir.1992) (Attorney General's general supervisory powers insufficient to establish the connection with enforcement required by *Ex parte Young, cert. denied,* —— U.S. ——, 113 S.Ct. 2439, 124 L.Ed.2d 658 (1993)); *Long v. Van de Camp,* 961 F.2d 151, 152 (9th Cir.1992) (same).

We observe that the Court in *Ex parte Young,* while seemingly approving of the *Fitts* construction, rejected the notion that a general duty is always insufficient to meet the connection prerequisite:

> It has not, however, been held that it was necessary that such duty should be declared in the same act which is to be enforced.... The fact that the state officer, by virtue of his office, has some connection with the enforcement of the act, is the important and material fact, and whether it arises out of the general law, or is specially created by the act itself, is not material so long as it exists.

*Ex parte Young,* 209 U.S. at 157, 28 S.Ct. at 453. Unfortunately, although stating that, in some instances, a sufficient connection may arise from "general law," the Court neglected to define with particularity what it meant by that term. Nonetheless, several lower courts have departed with the *Fitts* view that such "general law" must be circumscribed in nature, compelling officers to enforce specific statutes (including that under attack). Instead, these courts have construed the term "general law" as referring to laws of great breadth imposing upon state officers general duties to enforce all state laws. *See N.A.A.C.P. v. State of California,* 511 F.Supp. 1244, 1255 (E.D.Cal.1981), *aff'd,* 711 F.2d 121 (9th Cir.1983); *Allied Artists Pictures Corp. v. Rhodes,* 473 F.Supp. 560, 567 (S.D.Ohio 1979), *on reexamination,* 496 F.Supp. 408 (S.D.Ohio 1980), *modified on other grounds,* 679 F.2d 656 (6th Cir.1982); *Johnson v. Rockefeller,* 58 F.R.D. 42, 45–46 (S.D.N.Y.1972), *aff'd,* 415 U.S. 953, 94 S.Ct. 1479, 39 L.Ed.2d 569 (1974); *Socialist Workers Party v. Rockefeller,* 314 F.Supp. 984, 988 (S.D.N.Y.), *aff'd mem.,* 400 U.S. 806, 91 S.Ct. 65, 27 L.Ed.2d 38 (1970); *City of Altus v. Carr,* 255 F.Supp. 828, 834–37 (W.D.Tex.), *aff'd,* 385 U.S. 35, 87 S.Ct. 240, 17 L.Ed.2d 34 (1966). Weinstein urges the court to rely upon this expansive notion of the connection requirement. We, however, decline to do so.

Simply put, were this court to conclude that Governor Edgar's general obligation to faithfully execute the laws is a sufficient connection to the enforcement of 105 ILCS 5/24–2, then the constitutionality of every statute enacted by the Illinois legislature necessarily could be challenged by merely naming the Governor as a party defendant. Such a result would plainly extend the holding in *Ex parte Young* beyond that which the Supreme Court intended and has subsequently held. We are sensitive to Weinstein's concern that, because the statute does not delegate enforcement to a particular state official, there may not be an officer with a more substantial connection to the enforcement of 105 ILCS 5/24–2. In the absence of Governor Edgar, however, Weinstein is not left without recourse. As defendants concede, should Weinstein prevail, she may obtain the full relief sought by the issuance of an injunction against Robert Leininger in his capacity as Superintendent of the Illinois State Board of Education, who has a duty to "supervise" the Illinois public schools, 105 ILCS 5/2–3.3, and to act as a "legal adviser" on questions arising under the school laws. 105 ILCS 5/2–3.7.

In sum, we hold that Governor Edgar does not bear a sufficient connection with the enforcement of 105 ILCS 5/24–2 and, as such,

the instant motion to dismiss is granted.[2] It is so ordered.

---

**2.** Alternatively, we conclude that the lack of threatened enforcement by Governor Edgar renders unsatisfied the "case or controversy" requirement of Article III and, without a real and substantial controversy between the parties, Weinstein's claim against Governor Edgar must be dismissed. *See Long,* 961 F.2d at 152; *N.A.A.C.P.,* 511 F.Supp. at 1259–62.