GALAXY RENTAL SERVICE, INC., by CHARLES BARONE, President, Appellant, v STATE OF NEW YORK et al., Respondents.

Fourth Department, July 9, 1982

APPEARANCES OF COUNSEL

*Lipsitz, Green, Fahringer, Roll, Schuller & James (Paul Cambria, Jr.,* of counsel), for appellant.

*Robert Abrams, Attorney-General (Arthur Giacalone* and *William J. Kogan* of counsel), for respondents.

BOOMER, J.

On this appeal we are called upon to decide the constitutionality of certain provisions of article 12 of the Real Property Law and related rules authorizing the Secretary of State to regulate the business of apartment information vendors. Of primary concern is the extent to which the Secretary of State can control the plaintiff's commercial speech.

Plaintiff is an apartment information vendor. An apartment information vendor sells information concerning apartments and other dwellings available for rental (Real Property Law, § 446-a, subd 2), and is required to obtain a license from the Secretary of State (Real Property Law, § 446-b). Additional restrictions on its business, which the plaintiff attacks on this appeal, are the limitation upon fees it may charge (Real Property Law, § 446-c, subds 2, 5); the requirement that it obtain written authorization from an apartment owner before listing his apartment (19 NYCRR 190.6 [a]); and the prohibition against advertising specific apartments available for rental (19 NYCRR 190.8).

■■ The plaintiff brought this action to declare unconstitutional the provisions of article 12-C of the Real Property Law and of the rules of the Secretary of State imposing these restrictions on its business, and it moved for a preliminary injunction to enjoin the Secretary of State from enforcing those provisions pending the determination of the action. Special Term denied the motion, holding that plaintiff failed to show the likelihood that it will ultimately succeed in establishing the invalidity of any of the provisions plaintiff attacks. We agree, for the reasons stated at Special Term, that the plaintiff failed on the motion to show a likelihood that it would ultimately meet the heavy burden of establishing the unconstitutionality of the provisions of the statute and rules regulating its fees and of those requiring it to obtain written authorization from apartment owners. We determine, however, that the plaintiff has shown a strong likelihood that it will ultimately succeed in this action in establishing that the restriction imposed on its advertising violates the First and Fourteenth Amendments to the United States Consti-

tution insofar as those amendments protect commercial speech. We, therefore, reverse the order below and grant a preliminary injunction enjoining the Secretary of State from enforcing this restriction.

Article 12-C of the Real Property Law was enacted by the Legislature in 1975 to curb certain abuses that existed in the apartment information business. In October, 1979, after four years of experience in regulating that business, the Secretary of State held hearings which revealed that the abuses continued to exist. Customers, for substantial fees paid in advance, were being referred to apartments that either did not exist, were not available for rental, were uninhabitable, or failed to meet the customer's specifications. False and misleading advertising attracted customers who, due to an acute housing shortage, were especially vulnerable to these deceitful practices.

Following the hearings, the staff of the Secretary of State made recommendations which resulted in certain amendments to article 12-C and to the regulations of the Secretary.[1] The fee to a customer was limited to one month's rent on any apartment rented by that customer as the result of information furnished by the vendor and the vendor was required to return to the customer any fee collected in advance, less a $15 charge for administrative expenses, should the customer not rent an apartment through the information furnished (Real Property Law, § 446-c, subds 2, 5; 19 NYCRR 190.2 [d]). A detailed form of contract between the vendor and the customer was prescribed (Real Property Law, § 446-c, subd 1; 19 NYCRR 190.1), and reporting and record keeping were required (Real Property Law, § 446-c, subd 4; 19 NYCRR 190.3). Finally, advertising was restricted. A new regulation was added to provide: "No apartment information vendor shall place any advertisements for specific apartments. Advertisements shall be limited to the vendor's name, address, telephone number and business hours, and a description of the services offered." (19 NYCRR 190.8.) We address ourselves to the validity of this regulation in light of the

---

1. The requirement that an apartment information vendor obtain written authorization from the owner before listing his apartment was added by regulation adopted in December, 1978, before the hearings were held (19 NYCRR 190.6).

recently evolved constitutional principles affecting "commercial speech".

Advertising is a form of commercial speech which is now protected by the First and Fourteenth Amendments to the Constitution of the United States.[2] The extent of that protection is outlined in a series of cases decided by the Supreme Court beginning with *Virginia Pharmacy Bd. v Virginia Consumer Council* (425 US 748). In that case the court struck down a Virginia statute that prohibited pharmacists from advertising the prices of prescription drugs. Society, it said, has a strong interest in the free flow of commercial information. Balanced against this is the interest of the State in maintaining a high degree of professionalism on the part of licensed pharmacists. The court determined that permitting pharmacists to advertise the prices of their products would not affect the professional standards of pharmacists and would make useful information available to the public. False or misleading advertising could, of course, still be forbidden. "The First Amendment * * * does not prohibit the State from insuring that the stream of commercial information flow cleanly as well as freely." (*Virginia Pharmacy Bd. v Virginia Consumer Council, supra,* pp 771-772.)

Next, in *Bates v State Bar of Ariz.* (433 US 350), the Supreme Court invalidated the State's ban on advertising lawyers' fees. "[C]ommercial speech", the court stated (p 364), "serves to inform the public of the availability, nature, and prices of products and services, and thus performs an indispensable role in the allocation of resources in a free enterprise system."

In *Ohralik v Ohio State Bar Assn.* (436 US 447), the court upheld a ban on personal solicitation of clients by lawyers because of the potential harm inherent in this practice. Ohralik's conduct was a prime example of this harm. He had made a hospital visit to a young victim of an automobile accident and offered her his services when she was suffering from injuries and in no position to make a discriminating choice of an attorney. The court held (p 457)

---

2. See, also, section 8 of article I of the New York State Constitution which also guarantees freedom of speech.

that it was proper to restrict the manner of advertising by banning personal solicitation, for "[u]nlike a public advertisement, which simply provides information and leaves the recipient free to act upon it or not, in-person solicitation may exert pressure and often demands an immediate response, without providing an opportunity for comparison or reflection."

Recently, the Supreme Court in *Central Hudson Gas v Public Serv. Comm.* (447 US 557) determined that the New York Public Service Commission violated Central Hudson Gas and Electric Corporation's constitutional right to commercial speech when it ordered utilities to cease all advertising that promoted the use of electricity. In coming to this determination, the court reviewed the prior commercial speech cases, and announced that a "four-part analysis" had developed. (1) To be protected, commercial speech "at least must concern lawful activity and not be misleading". If it meets this test, it may, nevertheless, be regulated, if (2) "the asserted governmental interest is substantial", and (3) "the regulation directly advances the governmental interest asserted", and (4) "it is not more extensive than is necessary to serve that interest" (*Central Hudson Gas v Public Serv. Comm., supra,* p 566). Applying this analysis the court found that (1) there was no claim that the expression at issue was inaccurate or that it related to an unlawful activity, (2) the State's interest in conserving energy was substantial, and (3) that interest was directly advanced by the ban on advertising, but (4) the regulation was more extensive than necessary to further the State's interest in energy conservation since it prohibited all promotional advertising regardless of its effect on over-all energy use.

The fourth step of the analysis was quoted and applied in *Matter of R. M. J.* (__ US __, 102 S Ct 929), where the court held that the State of Missouri unconstitutionally prohibited attorneys from mailing announcements to persons other than lawyers, clients, former clients, personal friends and relatives. The court conceded that (p __, p 939) "[m]ailings and handbills may prove more difficult to supervise than newspapers." It stated, however (p __, p 939), that it was not clear "that an absolute prohibition [was] the

only solution." The State could have exercised reasonable supervision over those mailings by requiring that they be filed with the regulatory authority. Moreover, there was "no indication in the record of a failed effort to proceed along such a less restrictive path" (*supra,* p __, p 939).

Our State Court of Appeals has applied the analysis enunciated in *Central Hudson Gas* in determining the validity of restrictions on advertising by attorneys (see *Matter of Greene,* 54 NY2d 118, cert den __ US __; *Matter of Koffler,* 51 NY2d 140, cert den 450 US 1026). In *Matter of Koffler* (*supra,* p 143), the court held that "[d]irect mail solicitation of potential clients by lawyers is constitutionally protected commercial speech which may be regulated but not proscribed." The court (*supra,* pp 147-151), in striking down the ban on direct mail advertising, cited *Central Hudson Gas v Public Serv. Comm.* (*supra*) and found that the State's ban failed to clear the fourth step. The court said that less restrictive measures were available to protect the State's interest, for attorneys could be required to file all mail advertisements with the Appellate Division.

In *Matter of Greene* (*supra*), on the other hand, the court held that the State could constitutionally prohibit mail advertising by attorneys addressed to real estate brokers. The mailings in question solicited the real estate brokers to recommend that their customers use the attorney's legal services in connection with the purchase or sale of real property. The court held that the proscription was constitutional. The State had a substantial interest in preventing the potential conflict of interest inherent in the solicitation. As a result of the solicitation, the attorney would be confronted with a conflict between the interest of the broker and the interest of any client solicited by the broker. Concerning the fourth step of the *Central Hudson Gas* analysis, the court held that nothing short of a direct prohibition of third-party solicitation would obviate the serious likelihood of this conflict of interest.

Turning to the case at hand, we have no difficulty in quickly applying the first three steps of the *Central Hudson Gas* analysis to the restriction imposed on the plaintiff's advertising. First, there is no contention that the

subject matter of the advertising involved is illegal and the prohibition extends to advertising that is not misleading. Second, the State has demonstrated a substantial governmental interest in protecting the public against the deceitful practices that have occurred in the apartment information business. Third, the restrictions imposed directly advance the governmental interest. The ban on all advertising of specific apartments available for rental, eliminates one of the evils complained of — the solicitation of desperate apartment seekers by the advertising of apparently desirable apartments, that are either nonexistent, unavailable or uninhabitable.

■ Application of the fourth step, however, leads us to the conclusion that the State's ban on advertisement of specific apartments fails to pass constitutional standards. Unlike the State authorities in *Ohralik v Ohio State Bar Assn.* (436 US 447, *supra*) and *Matter of Greene* (54 NY2d 118, *supra*), the defendant has not shown that its interests cannot be advanced by less restrictive means.

Defendant argues that potentially misleading commercial speech may be totally banned when less restrictive methods have proved ineffective. It claims that it tried less restrictive measures and they did not work. It was aware in 1975 of the complaints by consumers that desirable apartments were advertised by vendors, but seldom were they available for rent. In December, 1978, the Secretary of State amended his regulations to require that "all advertisements placed by an apartment referral agent must indicate that the advertiser is an apartment referral agent or give the name of the apartment referral agent and his telephone number." (19 NYCRR 190.8 [a].) This the Attorney-General argues, was an attempt to curb "the invidious form of deception inherent in specific apartment advertising, that is the inference that the advertisements are placed by an individual who is in control or is participating in the renting of the apartment advertised." In spite of this regulation, advertisements published as late as 1980 still conveyed the same inference. The answer to this argument is that the regulation, on its face, appears ineffective to dispel the inference that an apartment referral agent controls the rental of apartments he advertises. There is

available to defendant a more effective solution, short of a complete ban. Defendant can require that the advertisement carry a disclaimer in language that makes it clear to the public that the apartment referral agent, or apartment information vendor, as he is now called, is only selling information about the apartments and has no control over their rental (i.e., see the contract disclaimer required by section 446-c prior to its amendment in 1980).[3]

Defendant further argues that specific apartment advertisements still contain misleading geographical descriptions in spite of the regulation adopted in 1978 designed to correct that abuse. That regulation required that "[a]ll advertisements placed by an apartment referral agent which state that the apartment is in the vicinity of a geographical area or territorial subdivision must indicate as part of such advertisement the name of the geographical area or territorial subdivision in which such apartment is actually located." (19 NYCRR 190.8 [b], filed and eff Dec. 27, 1978 [repealed 1980].) There is no showing in the record that specific apartment advertisements, placed after the adoption of the 1978 amendment to the regulations, contained misleading geographical descriptions, but we do not discount the likelihood of this fact. Nevertheless, the defendant has an adequate remedy short of total ban, to correct this abuse. If an apartment vendor's advertisement does not comply with the regulation, the Secretary of State may take action and, if necessary, revoke the vendor's license. To aid in enforcement of this regulation, the Secretary may require that copies of all advertisements be filed in his office (see *Matter of R. M. J.,* __ US __, __, 102 S Ct 929, 939, *supra; Matter of Koffler,* 51 NY2d 140, 150, *supra*). The difficulty of enforcing less restrictive measures does not justify a total ban (*Bates v State Bar of Ariz.,* 433 US 350, 379, *supra*). Obviously, it is less onerous to enforce a ban on potentially deceptive advertisements than to police them. This cannot be a valid reason for imposing a ban, for if it were, almost all commercial advertising could

---

**3.** Section 446-c of the Real Property Law formerly required that the contract with the consumer contain the following recitation: "We are a referral service only. We are not acting as real estate brokers or real estate salesmen. We do not guarantee that the consumer will find a satisfactory apartment through our services. Our only purpose is to furnish the consumer with lists of available apartments" (L 1975, ch 772, § 1).

be banned rather than regulated. Again, if the continuation of the abuse is due to the imprecise language of the regulation, that can be corrected.[4]

For these reasons we conclude there is a strong likelihood that the plaintiff will ultimately succeed in obtaining a judgment declaring that the ban on the advertising of specific apartments is unconstitutional.

Accordingly, the order should be reversed and an order granted preliminarily enjoining the defendant from enforcing the provisions of 19 NYCRR 190.8.

DILLON, P. J., SIMONS, DOERR and SCHNEPP, JJ., concur.

Order unanimously reversed, with costs, and preliminary injunction granted in accordance with opinion by BOOMER, J.

---

4. A Department of State staff report of November, 1979 recommended that "[a]ll advertisements must state the name of the nearest intersection to the apartment being advertised." (NY Dept. of State, Staff Report on Apartment Referral Agents, p 26, Nov. 20, 1979.)