**Lan Lan WANG and Principal Connections, Ltd., d/b/a MLX.COM, Plaintiff,**

v.

**George E. PATAKI, in his official capacity as Governor of the State of New York, and Eliot Spitzer, in his official capacity as Attorney General of the State of New York, Defendants.**

**No. 00 CIV. 9425(RWS).**

United States District Court,
S.D. New York.

Oct. 5, 2001.

Abberley Kooiman LLP by Brooks Banker, Jr., New York City, for Plaintiff.

Eliot Spitzer, Attorney General of the State of New York by Martin Bienstock, Michael E. Peeples, Assistant Attorneys General, New York City, for Defendants.

## OPINION

SWEET, District Judge.

The defendants George E. Pataki, in his official capacity as Governor of the State of New York (the "Governor"), and Eliot Spitzer, in his official capacity as Attorney General of the State of New York (the "Attorney General"), (collectively, "the State"), have moved under Rule 12(b)6, Fed.R.Civ.P., to dismiss the complaint of plaintiffs Lan Lan Wang ("Wang") and Principal Connections, Ltd., d/b/a MLX. COM ("MLX.Com"). For the reasons set forth below, the complaint is dismissed as to the Governor and a *Pullman* abstention is granted.

The propriety of the action undertaken by the Secretary of State to enforce the State's statutes by way of cancellation of Wang's real estate broker's license is peculiarly a state issue as is the application of the statute to an internet site. Since these issues are squarely before the State Court and may obviate any constitutional questions, *Pullman* abstention is appropriate.

### Prior Proceedings

Wang and Principal Connections filed their complaint on December 12, 2000 (the "Complaint"). The complaint alleges that Principal Connection is a New York corporation and Wang is a New York resident and an officer, director and shareholder of Principal Connections.

According to the Complaint, in 1995 MLX.Com developed a website which pro-

vided a visitor, an unregistered user, or a subscriber to the website with access to a portal of information concerning residential apartment listings in New York and New Jersey.

The Complaint alleges that on February 12, 1999, the Secretary of State of the State of New York commenced an administrative proceeding against Wang contending that by operating the website without a license in accordance with Real Property Law Article 12–C, §§ 446–a, *et seq.*, the Apartment Information Vendors Law (the "AIV"), Wang breached her duties as a licensed real estate broker and that on January 31, 2000 an order was issued suspending her license as a real estate broker. The Complaint alleges that the AIV constitutes an unconstitutional statutory scheme requiring an "Apartment Information Vendor" to be registered, to obtain a license, to provide a contract for a customer setting forth the source of information conveyed, and to comply with a provision concerning any fees charged, and providing that any violation of the act constitutes a misdemeanor.

The Complaint also describes the nature and operation of the internet and the methods by which the information on the Web Site is made available.

The Complaint alleges three causes of action: that the AIV violates the Interstate Commerce Clause, U.S. Const. Art. 1, §§ 8 & 3; that it violates the First and Fourteenth Amendments of the United States Constitution because it bans constitutionally protected speech; and that it violates the First, Fifth and Fourteenth Amendments because it is unconstitutionally vague.

The Complaint refers to a decision of January 31, 2000 by the Honorable Roger Schnier, the Administrative Law Judge (the "ALJ"), which found that Wang was a licensed real estate broker, that she found-

ed Manhattan Listing Express in 1996 and provided listing of apartments for a fee of $175, that Wang commenced an internet-based business using the Web Site and that:

When consumers access the respondent's web site they are offered, without fee, the opportunity to obtain information about various aspects of the real estate business in New York City, about taxes, and about moving, to receive discounts from certain non-affiliated businesses, to participate in an on-line bulletin board, and to access a database of apartments which are available for rent or sale. The database describes the apartments which are available for rent, but does not give their addresses or otherwise indicate how to contact the landlords. By paying a fee of $150.00 the consumer receives on-line access to the addresses of any contact information for the rental apartments, as well as increased discounts from the non-affiliated businesses.

The decision of the ALJ concluded that Wang was an Apartment Information Vendor, had not obtained a license and thus violated the AIV, and "thereby demonstrated untrustworthiness and incompetence as a Real Estate Broker" and suspended her license. On January 4, 2001, the Secretary of State, the Honorable Alexander F. Treadwell ("Secretary of State") upheld the ALJ's decision.

On May 7, 2001, Wang commenced an Article 78 proceeding in the Supreme Court of the State of New York, New York County, against the Secretary of State, Indéx No. 109389/2001 (the "Article 78 Proceeding") alleging that the ALJ's findings and conclusions were "arbitrary, capricious and improper, illegal and unconstitutional". Wang contended that the findings and conclusions of the ALJ should be dismissed because; 1) MLX.Com was not

covered by the AIV, 2) internet services are not included under the AIV, 3) the enforcement of the terms of the AIV by suspension of Wang's license was improper, 4) the AIV violates the Commerce Clause and free speech rights as interpreted, 5) notice of the hearing was inadequate, and 6) the decision of the ALJ was without authority, constituted an abuse of discretion and was not supported by substantial evidence.

The motion of the Governor and the Attorney General to dismiss the Complaint or to stay the action was marked fully submitted on June 27, 2001.

### The Facts

For the purposes of the instant motion, the facts as alleged in the Complaint are taken as true. *See Brady v. Town of Colchester*, 863 F.2d 205, 210 (2d Cir.1988) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n. 2, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (Brennan, J., dissenting)).

As set forth in the Complaint, MLX. Com provides consumers around the world with access to information related to the residential real estate markets in New York and New Jersey via the internet through the MLX.Com site, where renters, buyers, sellers, landlords and brokers with common interests can communicate with each other about their services and needs. The services and information contained on the MLX.Com website are continuously updated.

The memorandum of law submitted to the Secretary of State on behalf of Wang stated that for a payment of $150, a subscriber to the website was entitled to a number of discounts, the specifics of certain apartments, the timing of access and the identification of the offeror. It further stated that MLX.Com has invested $2 million in technology and receives a greater portion of its income from participating brokers, and that the cost of servicing each apartment seeker is twice the $150 subscription fee.

### The Statute

The statute which Wang and MLX.Com seek to enjoin, the AIV, was enacted in 1975 after a public hearing in response to consumer complaints about apartment information vendors who sold lists of apartments and advertised highly appealing apartments as available for low rental payments, some of which were unsuitable, unavailable and nonexistent. The AIV sought to address this problem and required, first, that apartment information vendors operating in the State of New York be licensed by the State. RPL § 446-b. To obtain a license, AIVs must demonstrate that they are trustworthy and bear a reputation for good and fair dealing, and must pay a fee of $400, from which the State monitors and enforces the law. *Id.* § 446-B(2). AIVs must place $5,000 in an escrow account to insure that defrauded consumers will be able to receive reimbursement and must file quarterly statements with the New York Secretary of State. *Id.* §§ 446-b(6), 446-e, 446-h & 446-c(4).

The Act also regulates the fees that AIVs may charge to consumers. Although an AIV may charge an advance fee, actual fees are limited to one month's rent, and may only be paid when a consumer actually obtains an apartment referred by an AIV; in the event the consumer is unsuccessful in obtaining an apartment, the AIV may retain only a $15 administration fee. *Id.* § 446-c(5). The law contains a severability clause (*id.* § 446-j), and directs the Secretary of State to adopt appropriate regulations, which the Secretary has published at 19 NYCRR §§ 190.1–190.8

After four years of regulating the apartment information industry, the Secretary of State held hearings on the statute,

"which revealed that abuses continued to exist." *Galaxy Rental Serv., Inc. v. State,* 88 A.D.2d 99, 101, 452 N.Y.S.2d 921 (4th Dep't 1982). As a result, the Act was amended in 1980. The Act was amended again in 1998.

On February 12, 1999, the Secretary of State of the State of New York commenced an administrative proceeding against Wang contending that by operating the MLX.com website without a license in accordance with the AIV, Wang breached her duties as a licensed real estate broker and on January 31, 2000 an order was issued suspending her license as a real estate broker which was affirmed by the Secretary of State on January 4, 2001.

### The Complaint Fails to State a Claim Against the Governor

■ Plaintiffs allege that the Governor "is vested with the executive power of the State of New York and is required to ensure that the laws of the State of New York are faithfully and fairly executed." These allegations are insufficient to state a claim against the Governor. The State Constitution does provide that "[t]he executive power shall be vested in the governor" (N.Y. Const., Art IV, § 1), who "shall take care that the laws are faithfully executed." N.Y. Const. Art. IV, § 3. It does not follow, however, that the Governor is a necessary or proper party to every suit raising a challenge to the constitutionality of a state statute. On the contrary, where the legislative enactment provides that entities other than the executive branch of the state are responsible for implementation of the statute no claim against the Governor lies. *See Ex Parte Young,* 209 U.S. 123, 157, 28 S.Ct. 441, 52 L.Ed. 714 (1908) ("it is plain that [a defendant state] officer must have some connection with the enforcement of the [challenged] act"); *Gras v. Stevens,* 415 F.Supp. 1148, 1151–52 (S.D.N.Y.1976) (general duty of governor

under the State Constitution § 3 is not sufficient to make him a necessary party to an action challenging the constitutionality of a state statute that he is not charged to enforce).

Plaintiffs fail to show that the Governor has any connection with the enforcement of the AIV other than the general duty to take care that the laws be faithfully executed. Plaintiffs' reliance on *Association of Am. Med. Colleges v. Carey,* 482 F.Supp. 1358 (N.D.N.Y.1980) in support of their argument that the Governor's general executive duty is an adequate basis for liability is misplaced. As the Southern District, in criticizing *Carey,* recently noted, "the vast majority of courts to consider the issue have held ... that a state official's duty to execute the laws is not enough by itself to make that official a proper party in a suit challenging a state statute." *Warden v. Pataki,* 35 F. Supp.2d 354, 359 (S.D.N.Y.), *aff'd, Chan v. Pataki,* 201 F.3d 430 (2d Cir.1999), *cert. denied,* 531 U.S. 849, 121 S.Ct. 122, 148 L.Ed.2d 77 (2000). Since the Department of State, not the Governor, is responsible for administering the AIV, and the Attorney General, not the Governor, is responsible for enforcing its penalties, the general executive duty of the Governor does not provide a basis for a claim against him. *See Gras v. Stevens,* 415 F.Supp. 1148, 1151–52 (S.D.N.Y.1976).

### Pullman Abstention is Appropriate

■ The *Pullman* doctrine permits this Court to abstain until the New York Courts resolve questions of state law upon which the Constitutional adjudication will depend. *Railroad Comm'n of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

■ Under *Pullman,* abstention may be appropriate in this Circuit when (1) an unclear state statute is at issue; (2) resolu-

tion of the federal constitutional issue depends on the interpretation of the state law; and (3) the law is susceptible "to an interpretation by a state court that would avoid or modify the federal constitutional issue." *Greater New York Metro. Food Council v. McGuire,* 6 F.3d 75, 77 (2d Cir.1993). This case satisfies all three requirements for *Pullman* abstention.

■ The plaintiffs here have argued that the AIV violates the Commerce Clause and the First Amendment because it places unreasonable burdens on their internet business. To determine the extent of that burden will require an interpretation of state law and a determination not only whether the AIV applies to the business of Wang and MLX.com, but also how the various provisions apply to an internet company.

Wang has also challenged in the State Court the applicability of the AIV to the website, maintaining that the site is not an apartment information vendor but rather a method of providing access to information, not only for New Yorkers but worldwide, a so-called "bi-directional internet platform." She also has urged that the AIV as a criminal statute should be construed narrowly, as opposed to the expansive interpretation of the ALJ maintaining that the involvement of a real estate subject matter on the internet was not grounds for the application of AIV.

Were any of these grounds to be successful in the State Court, the constitutional issues, also raised in the Article 78 Proceeding, would be obviated. A the State Court *may* determine that the AIV does not apply to a person who sells infor-

mation concerning the availability of New York apartments via the internet, and the extent of the particular requirements of the AIV apply to such a person might dispose of the constitutional issues raised here. *See Tunick v. Safir,* 209 F.3d 67, 74–75 (2d Cir.2000) (stating that "opacity notwithstanding", deferral is only appropriate where a single adjudication in state court could eliminate the constitutional difficulties).[1]

Wang and MLX.Com also contend that their challenge to the AIV as facially invalid on constitutional grounds cannot be resolved by the Article 78 Proceeding, *citing CECOS Intern., Inc. v. Jorling,* 895 F.2d 66 (2d Cir.1990) ("CECOS"). However, CECOS concluded that facial constitutional issues could be reached in the State Court setting:

> Further, where all the necessary parties are present before Special Term, it [the Article 78 Proceeding] may test the constitutionality of the statute itself by treating the Article 78 petition challenging the statute on it face as a declaratory judgment action. *Kovarsky,* 31 N.Y.2d at 192, 335 N.Y.S.2d 383, 286 N.E.2d 882. *Lakeland Water Dist. v. Onondaga County Water Auth.,* 24 N.Y.2d 400, 408–09, 301 N.Y.S.2d 1, 248 N.E.2d 855 (1969). In light of this, we cannot assume that New York's procedures are inadequate to provide plaintiff a forum to review its constitutional claims. *See University Club,* 842 F.2d at 40 (adequate opportunity to raise constitutional claims in judicial review of administrative action). Hence, contrary to the district court's conclusion, the

---

1. This action is particularly appropriate for abstention because of the oblique effort of the Secretary of State to enforce the AIV. Rather than a direct action against Wang and MLX. Com for violating the AIV, the Secretary determined that Wang had violated the AIV and

that such violation constituted grounds for suspension of her license as a real estate broker. By her Article 78 Proceeding, Wang has challenged this procedure and the propriety of such grounds for license revocation.

question of opportunity for judicial review should be answered in the affirmative.

The State is clearly present in the Article 78 Proceeding and, therefore, MLX. Com is the only missing party, whose interests are identical to those of Wang. Should the Court choose to do so, a declaratory judgment cause could be added to the present state proceeding. The Second Circuit, dealing with a *Younger* abstention based on an Article 78 Proceeding challenging the suspension of a license to practice dentistry, affirmed the abstention, stating:

> The Supreme Court has clearly held that a would-be plaintiff who has been subjected to a state proceeding which he seeks to challenge in federal court must first exhaust all available state appellate remedies—unless, of course, an exception to *Younger* applies or other *Younger* prerequisites are not met. *See Huffman v. Pursue, Ltd.,* 420 U.S. 592, 608, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975).

.    .    .    .    .

The language of *Huffman* indicates that the question whether the state's procedural remedies *could* provide the relief sought does not turn on whether the state *will* provide the relief sought by the plaintiff before the federal court. Kirschner has made no showing that the State's laws, procedures, or practices would prevent his effective interposition of his federal contentions.

*Kirschner v. Klemons,* 225 F.3d 227 (2d Cir.2000).

Since the AIV is susceptible to an interpretation by a state court that would avoid constitutional adjudication and the currently pending state court proceedings are adequate to address the issue, a *Pullman* abstention is warranted.

## Conclusion

The complaint is dismissed as to the Governor. The motion for *Pullman* abstention is granted, and the action is stayed pending resolution of the State proceeding.

It is so ordered.