**Lan Lan WANG and Principal Connections, Ltd., d/b/a MLX.Com, Plaintiffs,**

v.

**George E. PATAKI, in his official capacity as Governor of the State of New York, and Eliot Spitzer, in his official capacity as Attorney General of the State of New York, Defendants.**

**No. 00 Civ.9425 RWS.**

United States District Court, S.D. New York.

Oct. 25, 2005.

---

Allyn & Fortuna LLP, New York, NY by Nicholas Fortuna, for Plaintiffs.

Honorable Eliot Spitzer, Attorney General of the State of New York, New York, NY by Lewis A. Polishook, Assistant Attorney General, for Defendants.

*OPINION*

SWEET, District Judge.

The defendants Eliot Spitzer, Attorney General of the State of New York (the "Attorney General"), Randy A. Daniels, Secretary of State of the State of New York (the "Secretary") (collectively, the "Defendants") have moved pursuant to Rule 12(b)6, Fed.R.Civ.P., to dismiss the First Amended Complaint ("FAC") of the plaintiff *pro se* Lan Lan Wang ("Wang") and Principal Connections, Ltd., d/b/a MLX.com ("PCL") (collectively, the "Plaintiffs"). For the reasons set forth below, the motion is granted.

**Prior Proceedings**

The Plaintiffs filed their complaint on December 12, 2000. The Governor and the Attorney General moved to dismiss the complaint and in an opinion of October 5, 2001, the motion was granted as to the Governor and the action was stayed, (the "October 5 Opinion"), *Wang v. Pataki*, 164 F.Supp.2d 406 (S.D.N.Y.2001). After the completion of state court proceedings, described below, the Plaintiffs filed the FAC on November 19, 2004.

The FAC alleges five causes of action: (1) that "Plaintiffs' business is targeted for government action," and coupled with the Defendants' alleged "arbitrary and capricious interpretation of the AIV law" this "amounts to a prior restraint by the Defendants against the Plaintiffs' commercial speech" (FAC ¶ 57); (2) that 19 N.Y.C.R.R. § 190.8, which provides that "[n]o apartment information vendor shall place any advertisements for specific apartments," and that, "[a]dvertisements shall be limited to the vendor's name, address, telephone number and business hours, and a description of the services offered," is an unconstitutional abridgement of Plaintiffs' First Amendment right to engage in commercial speech (FAC ¶ 63); (3) that the Defendants have selec-

tively prosecuted Plaintiffs in violation of the Equal Protection Clause of the Fourteenth Amendment (FAC ¶¶ 66–70); (4) that the Defendants' "use of an administrative proceeding to suspend Wang's real estate broker's license" allegedly "denied her the opportunity to contest the constitutionality of the AIV law before the New York State courts," thereby "depriv[ing] the Plaintiffs of [substantive] due process of law" (FAC ¶¶ 73–74), and (5) that the privileges or immunities clause of the Fourteenth Amendment has been violated. (FAC ¶ 77).

On August 24, 2003, Wang applied to the Secretary for a license under the Apartment Information Vendor Law, N.Y. Real Property Law § 446–a–j (the "AIV" law). That application was denied, and Wang thereafter requested an evidentiary hearing on the issue of whether she should be granted an AIV license. On December 9, 2004, after a hearing, Administrative Law Judge ("ALJ") Felix Neals, in a one-page decision, found that Wang should be given an AIV license. That decision was appealed to the Secretary who on May 16, 2005 remanded the proceeding for further factual findings.

The instant motion was heard and marked fully submitted on May 18, 2005.

### The FAC

#### The Parties

Plaintiff PCL is a New York corporation doing business under the name MLX.com. (FAC ¶ 4).

Wang is a resident of New York, and the chief executive officer and majority shareholder of PCL. (FAC ¶ 5).

The Attorney General is charged with prosecuting criminal violations of the AIV law, originally enacted in 1975, which is the subject of this action. (FAC ¶ 6).

The Secretary is charged with administering New York's laws governing the occupational licensing of real estate brokers and apartment information vendors. The Secretary has the authority to issue, suspend, and revoke real estate brokerage and apartment information vendor licenses, as well as to regulate the business practices of licensees. (FAC ¶ 7).

The AIV law regulates the business practices of the apartment referral industry. The AIV law was intended to prevent fraudulent advertising practices and breach of contract by apartment referral agents, some of whom sold rental listings that contained non-existent or unavailable apartments. Subsequent amendments to the AIV law changed the description of licensees from "apartment referral agents" to "apartment information vendors." (FAC ¶ 8).

The AIV law forbids anyone from acting as an "apartment information vendor" without first obtaining a license from the New York Secretary of State. An apartment information vendor is defined as an individual or company which, for an advance fee, "furnish[es] information concerning the location and availability of real property, including apartment housing." (§ 446–c). The AIV law only applies to rental housing, not units for sale, such as condominiums or cooperatives. (FAC ¶ 9).

The AIV law authorizes the Secretary, at his discretion, to revoke or suspend an AIV license upon a finding that the license holder violated any provision of the AIV law. The AIV law authorizes the Attorney General to prosecute all criminal violations of the AIV law. (FAC ¶¶ 13, 14). Offenders are subject to a maximum fine of $5,000 for each infraction (§ 446–h(1–2)).

The Secretary has promulgated and maintained rules and regulations under the AIV law, N.Y. Comp.Codes R. & Regs. tit. 19, §§ 190.1–190–8, and § 190.8 of the Sec-

retary's rules and regulations state, "No apartment information vendor shall place any advertisements for specific apartments. Advertisements shall be limited to the vendor's name, address, telephone number and business hours, and a description of the services offered." (FAC ¶¶ 18, 19).

### The Plaintiffs' Business

In 1993, Wang, a licensed real estate broker, founded PCL to create a non-traditional Multiple Listing Service ("MLS") that would enable individual consumers to access the same listings used by real estate brokers. Prior to PCL's formation, there was no functional MLS in the New York City real estate rental market. (FAC ¶ 22).

PCL's service enabled property sellers, buyers, landlords, and renters, to interact directly through an Internet-based "portal," in addition to viewing listings provided by landlords, owners, and real estate brokers. Individual brokers and landlords and property owners could list with PCL. PCL operated the portal and the MLS as a single, integrated service, and PCL also provided limited in-house brokerage services, such as assisting lease negotiations. Wang served as PCL's official broker of record until her license was suspended by the Secretary in 2004. PCL charged individual customers a one-time flat fee for all services, including Wang's real estate brokerage and access to PCL's Internet portal. (FAC ¶¶ 23–25).

An individual could register with the PCL website to obtain a "guest" account that enabled him to search the MLS database free of charge for apartments meeting their criteria (i.e., neighborhood, number of bedrooms, and rent, etc.) and could then pay the one-time flat fee to purchase PCL's full product, which included brokerage services and specific information about the apartment listings, including location and contact information. (FAC ¶ 26).

### Application Of The AIV Law To The Plaintiffs

In 1995, Wang contacted the New York Department of State to note her concern that the AIV law, if applied to PCL's business, would impose substantial burdens on her and PCL that had nothing to do with promoting the statute's objective of protecting consumer welfare and concluded that the AIV law did not apply to PCL. Later in 1995, then-Secretary of State Alexander F. Treadwell, replying to an inquiry by a New York State senator, stated, "I agree with Ms. Wang that the [AIV] law is onerous and should be amended. I would be pleased to assist you in fashioning a legislative solution to this problem." (FAC ¶¶ 28, 29).

In 1999, the Secretary issued an administrative complaint seeking the revocation of Wang's real estate brokerage license for demonstrating "untrustworthiness and incompetence" by her management of PCL as an unlicensed apartment information vendor. The Attorney General has not brought any criminal charges against Wang or PCL under the AIV law. (FAC ¶¶ 30, 32).

A Department of State administrative law judge held that PCL was an unlicensed AIV, and, therefore, by operating PCL, Wang had "demonstrated untrustworthiness and incompetence as a Real Estate Broker," and Wang's license was suspended "until such time as she has presented proof satisfactory to the Department of State that she, either directly or through any business controlled by her, is no longer engaged in the business of Apartment Information Vendor." The ALJ refused to rule on Wang's constitutional claims, citing a lack of jurisdiction. (FAC ¶ 33).

Wang appealed the ALJ's decision to the Secretary. The Secretary upheld the decision. (FAC ¶¶ 33–34).

Wang filed a petition to review the Secretary's decision under Article 78 of New York's Civil Practice Law & Rules with the New York Supreme Court. The petition was transferred to the Appellate Division, First Department, which rejected Wang's Article 78 petition, holding that Wang could not challenge the constitutionality of the AIV law because she was only charged by the Secretary with violating the law governing the licensing of real estate brokers. (FAC ¶¶ 35, 37, 38). Wang sought leave to appeal the Appellate Division's decision to the New York Court of Appeals. The Court of Appeals denied leave on September 11, 2003. Wang's subsequent petition for a writ of certiorari to the United States Supreme Court was denied on February 23, 2004. (FAC ¶¶ 35, 37, 38).

The Secretary has not applied the AIV law to Village Voice Media, which in 1998 started a service on its website that charged an advance fee of $10 for access to apartment rental listings, nor to America Online, which provides access to apartment listings as part of a general advance fee-for-service Internet portal. (FAC ¶ 41).

According to the Plaintiffs, the Secretary has determined that an individual or business is not subject to the AIV law if the sale of apartment listings is a "secondary function" of the business. (FAC ¶ 42).

Paragraphs 45–54 of the FAC describe the injury suffered by the Plaintiffs. Paragraphs 55–60 allege the first cause of action, the violation of the First Amendment by prior restraint of the Plaintiffs' commercial speech. Paragraphs 61–64 allege a First Amendment violation of the Plaintiff's commercial speech. Paragraphs 65–70 allege a Fourteenth Amendment equal protection violation. Paragraphs 71–75 allege a Fourteenth Amendment substantive due process violation. Paragraphs 76–78 allege a Fourteenth Amendment violation of the Plaintiffs' privileges and immunities.

### The AIV Law

In 1975 the AIV law was enacted after a public hearing in response to consumer complaints about abusive conduct by Apartment Information Vendors. Governor's Bill Jacket, 1975, ch. 772 (stating that the business practices of the apartment referral industry have caused hundreds of complaints over a two-year period, including complaints of referrals to unsuitable, unavailable, and nonexistent apartments); Governor's Bill Jacket, 1980, ch. 805 (citing a rate of complaints about deceptive practices by AIVs that "far exceeds that for other licensees").[1]

AIVs must demonstrate that they are trustworthy and bear a reputation for good and fair dealing, pay a fee of $400 from which the state monitors and enforces the law, AIV law § 446–b(2), place $5,000 in an escrow account to insure that defrauded consumers will be able to receive reimbursements, and file quarterly statements with the Secretary. *Id.* §§ 446–b(6), 446–3, 446–h & 446–c(4).

Although an AIV may charge an advance fee, actual fees are limited to one

---

1. In ruling on a 12(b)(6) motion to dismiss, the Court may consider the documents submitted in the state administrative proceedings. *In re Hunter Environmental Services, Inc. Securities Litigation; Levin v. Hunter Env. Serv.,* 921 F.Supp. 914, 918 n.3 (S.D.N.Y. 1996); *accord Mr. & Mrs. D. v. Southington* *Bd. of Educ.,* 119 F.Supp.2d 105, 108 (D.Conn.2000). The Court may also take judicial notice of public documents, such as legislative histories. *See e.g., Yale–New Haven Hospital, Inc. v. Thompson,* 198 F.Supp.2d 183, 186 (D.Conn.2002).

month's rent, and may only be paid when a consumer actually obtains an apartment referred by an AIV; in the event the consumer is unsuccessful in obtaining an apartment, the AIV law may retain only a $15 administration fee. *Id.* § 446–c(5). The law contains a severability clause (*id.* § 446–j), and directs the Secretary to adopt appropriate regulations, which the Secretary has published at 19 NYCRR §§ 190.1–190–8.

After four years of regulating the AIV industry, the Secretary held hearings "which revealed that abuses continued to exist." *Galaxy Rental Serv., Inc. v. State,* 88 A.D.2d 99, 101, 452 N.Y.S.2d 921, 923 (4th Dep't.1982). As a result, the AIV statute was amended in 1980. The AIV statute was amended again in 1998.

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court should construe the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner,* 282 F.3d 147, 152 (2d Cir.2002) (citing *Gregory v. Daly,* 243 F.3d 687, 691 (2d Cir.2001)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). Dismissal is only appropriate when "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Sweet v. Sheahan,* 235 F.3d 80, 83 (2d Cir.2000).

### The Claim Against The Attorney General Is Dismissed

To bring suit against the Attorney General in his official capacity, the Plaintiffs must necessarily rely on *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). However, the exception to Eleventh Amendment immunity announced in *Ex Parte Young* applies only where the defendant state officer "ha[s] some connection with the enforcement of the [challenged] act." *Id.* at 157, 28 S.Ct. 441; *see Wang v. Pataki,* 164 F.Supp.2d at 410; *Gras v. Stevens,* 415 F.Supp. 1148, 1152 (S.D.N.Y.1976). In *Gras,* the three-judge court rejected, among other things, claims asserted against the Attorney General to challenge the constitutionality of a New York statute, reasoning "that when plaintiff began this action[ ] the Attorney General was not threatening to deprive him of anything." *Gras,* 415 F.Supp.2d at 1151.

Here, the Plaintiffs specifically allege that the Attorney General has not brought criminal proceedings, the only type within his jurisdiction, *see* RPL § 446–h(2), against them. (FAC ¶ 32). Moreover, the claims for relief pertain to actions of the Secretary, primarily in the administrative proceedings brought against Wang to revoke her broker's license. (FAC ¶¶ 30–37).

The Plaintiffs have suggested that the Attorney General might, at some future date, commence criminal proceedings against Plaintiffs for unlicensed operation of an AIV business. PCL Opp. at 7. Such allegations, which are not found in the FAC, fail because a wholly speculative threat of future prosecution is not actionable. *See, e.g., Marchi v. Board of Coop. Educ. Servs.,* 173 F.3d 469, 479 (2d Cir. 1999) ("plaintiff must show either prosecution pursuant to the challenged provision or that a sufficiently real and immediate threat of prosecution exists").

### The First Cause Of Action Based Upon Prior Restraint Is Dismissed

In the first cause of action, Plaintiffs have alleged that the fact that their

"business is targeted for government action," coupled with the Defendants' alleged "arbitrary and capricious interpretation of the AIV law, under which certain publications and Internet forums are exempt from licensing requirements .... amounts to a prior restraint by the Defendants against Plaintiffs' commercial speech." (FAC ¶ 57).

Our Circuit has held, "[g]overnmental action constitutes a prior restraint when it is directed to suppressing speech because of its content before the speech is communicated." *New York State Ass'n of Career Schools v. State Educ. Dep't,* 823 F.Supp. 1096, 1101 (S.D.N.Y.1993) (quoting *In re G. & A. Books, Inc.,* 770 F.2d 288, 296 (2d Cir.1985)). Here, the Secretary has not suppressed speech before it is communicated but rather revoked Wang's real estate broker's license because her unlicensed operation of an AIV demonstrated untrustworthiness.

▇ The State of New York may, consistent with the United States Constitution, require licensure to engage in numerous professions, including acting as a real estate broker. *See, e.g., Roman v. Lobe,* 243 N.Y. 51, 56–57, 152 N.E. 461, 463 (1926) (requiring real estate brokers to be licensed is constitutional). Under the Plaintiffs' theory, any adverse action taken based on a person's unlicensed practice of a profession would be transformed into a "prior restraint," and the State would have to overcome the "heavy presumption against ... constitutional validity" that attaches to such restraints. *New York State Ass'n of Career Schools,* 823 F.Supp. at 1101 (citation omitted).

▇ Although the Plaintiffs allege that PCL could not rationally be classified as an AIV, (FAC ¶¶ 40–41), the Appellate Division has held to the contrary. *See Wang v. Daniels,* 305 A.D.2d at 186–87, 757 N.Y.S.2d at 857. Wang is collaterally es-

topped from challenging that finding here. *See Giakoumelos v. Coughlin,* 88 F.3d 56, 59 (2d Cir.1996); *Parker v. Blauvelt Vol. Fire Co.,* 93 N.Y.2d 343, 349, 690 N.Y.S.2d 478, 482, 712 N.E.2d 647 (1999).

▇ As to PCL, under New York law "[c]ollateral estoppel precludes a party from relitigating in a subsequent action or proceeding an issue raised in a prior action or proceeding and decided against that party or those in privity." *Buechel v. Bain,* 97 N.Y.2d 295, 303, 740 N.Y.S.2d 252, 257, 766 N.E.2d 914 (2001). New York law governs the preclusive effect of New York court judgments in subsequent federal litigation. *See Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984).

Although PCL was not a party to the state court proceedings, its "chief executive officer and majority shareholder" Wang, was. (FAC ¶ 5). The state administrative and judicial proceedings concerned "petitioner's Internet business," namely, PCL. *Wang v. Daniels,* 305 A.D.2d at 186–87, 757 N.Y.S.2d at 857; *accord,* Exhibit D at 1–2 (discussing PCL, and referring to it as "respondent's," *i.e.,* Wang's website). The FAC has alleged that the state proceedings centered on the status of PCL. (FAC ¶¶ 31, 33–35, 37, 43, 46, 50). As a matter of law, PCL was in privity with Wang in the state court proceedings. It also is collaterally estopped from contending that it is not an AIV under New York law.

To meet these objections, the Plaintiffs urge the AIV law is unconstitutional, first as an infringement of free speech, and second as an unwarranted limitation on commercial speech. At this juncture care must be taken to determine what is, and what is not, at issue. Free information about apartments—whether on the internet by way of AOL or PCL—is not prohib-

ited by the AIV law. According to the parties no actions have been brought by the Village Voice or AOL.

Here, PCL charges a fee only after the customer has registered as a guest on its site, reviewed the apartment information, and then wishes to purchase PCL's full product, which included brokerage services and specific information about the apartment listings, including location and contact information (FAC ¶ 26), which presumably was essential to permit the customer to proceed with the transaction. It is this fee payment by the customer which subjects PCL, or Wang, to the AIV law requirements and which distinguishes this factual situation from *ForSaleByOwner.com Corp. v. Zinnemann*, 347 F.Supp.2d 868, 876–80 (E.D.Cal.2004) (*"FSBO.com"*) cited by the Plaintiffs.

The *FSBO* court held that California could not, consistent with the First Amendment, require an on-line apartment listing service to obtain a real estate broker's license before charging sellers to list their home for sale, but not require such licensure of newspapers that charge home sellers to advertise their homes. *See FSBO*, 347 F.Supp.2d at 877–79. *FSBO* also involved interactions between home sellers and listing agents. Here, by contrast, the AIV law only governs transactions between listing services and prospective renters.

The Plaintiffs here have challenged the restrictions which the AIV law has placed on commercial speech, citing *Central Hudson Gas & Elec. Corp. v. Public Service Comm'n of New York*, 447 U.S. 557, 563, 100 S.Ct. 2343, 2350, 65 L.Ed.2d 341 (1980). (Pl. Memo in Opp., p. 11).

Under the *Central Hudson* test, commercial speech receives no protection unless it: (i) concerns lawful activity and; (ii) is not misleading. Here, for purposes of this motion, the Defendants

have not disputed that the "speech" in question is lawful and not misleading. *Id.* at 564, 100 S.Ct. 2343. If the speech is lawful and not misleading, the regulation still must be upheld unless it is determined that: (i) the governmental interest is not substantial; and (ii) the regulation does not directly advance and is not reasonably tailored to serve the interest. *See id.; accord Greater New Orleans Broadcasting Ass'n, Inc. v. United States*, 527 U.S. 173, 185, 119 S.Ct. 1923, 144 L.Ed.2d 161 (1999); *Bolger v. Youngs Drug Prod. Corp.*, 463 U.S. 60 68–69, 103 S.Ct. 2875, 77 L.Ed.2d 469 (1983).

The State's interest in deterring deceptive practices by persons who charge fees for information about apartment availability and location is revealed in both the AIV statute's legislative history and published decisions construing the AIV statute. *See e.g., State v. Harrell's Empl. Guide*, 89 Misc.2d 807, 808, 392 N.Y.S.2d 529, 529 (N.Y.1977) (citing complaints against AIVs).

The licensing requirement helps ensure that prospective AIVs will be reliable and reputable. *See* RPL § 446–b(1) ("No person shall be granted a license until he has established that he is trustworthy and bears a reputation for good and fair dealing."). Licensing also enables the Secretary of State to monitor the business and practice of AIVs to guarantee compliance with the AIV law and continued protection of consumers. *See, e.g., id.* § 446–e(1) ("The Secretary may revoke or suspend a license, impose a fine not to exceed five thousand dollars, order refunds to aggrieved parties and issue reprimands . . . .").

The AIV law also requires AIVs to provide customers with a plain language contract setting forth the sources of their information concerning apartment avail-

ability and location. *See id.* § 446–c(1). The AIV law provides that "[e]ach listing of real property furnished by the AIV shall cite the source of information for each property in plain language form." *Id.* § 446–c(1–a). The AIV law also prevents the practice of charging substantial non-refundable advance fees for information that may prove worthless to the consumer by allowing vendors to retain only fifteen dollars of any advance fee for administrative services and requiring vendors to refund the balance of any advance fee when a customer does not rent an apartment. *Id.* § 446–c(5).

 In reviewing the propriety of state regulation of commercial speech, the courts give due deference to the governmental decisionmaker's judgment. Regulations limiting commercial speech need not be the "least restrictive alternative" available, *Board of Trustees,* 492 U.S. at 478, 109 S.Ct. 3028, nor must a restriction be imposed only in the absence of any "conceivable alternative." *Id.* Indeed, the Supreme Court has been "loath to second-guess the government's judgment" as to the specific method of regulation. *Id.* (citation omitted); *see also Florida Bar v. Went For It, Inc.,* 515 U.S. 618, 635, 115 S.Ct. 2371, 132 L.Ed.2d 541 (1995). The Court has described the fit between the interest and the regulation as "narrowly tailored to achieve the desired objective." *Board of Trustees,* 492 U.S. at 480, 109 S.Ct. 3028 (citation omitted).

The right to communicate apartment information is not proscribed by the AIV law under the current authorities. Under the AIV law, vendors may charge as much as an entire month's rent for providing apartment information, *see* RPL § 446–c(2), and does not prohibit a vendor from charging fees in advance. Instead, an AIV may charge a fee in advance, retain fifteen dollars of the fee for administrative services,

and then keep the balance of the fee when the customer rents an apartment through information provided by the vendor. *See id.* § 446–c(5). The AIV law simultaneously protects the customer from paying a non-refundable fee for information that may prove inaccurate or worthless, yet helps ensure that the vendor will be paid. The AIV law thus is reasonably tailored to meet its objective. *See Board of Trustees,* 492 U.S. at 480, 109 S.Ct. 3028 (noting that fit between legislature's ends and its chosen means need not be perfect, but only reasonable).

The FAC contains no allegations sufficient as a matter of law to support its claim of undue restriction on commercial speech.

### *The Selective Prosecution Claim Is Dismissed*

 The third cause of action alleges that Defendants have selectively prosecuted Plaintiffs, in violation of the Equal Protection Clause of the Fourteenth Amendment. (FAC ¶¶ 66–70). To state such a claim under the Equal Protection Clause based on selective prosecution, a plaintiff must allege that:

> (1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.

*Lisa's Party City, Inc. v. Town of Henrietta,* 185 F.3d 12, 16 (2d Cir.1999) (citations omitted).

Here, the Plaintiffs have alleged that the Secretary lacks jurisdiction to bring enforcement actions based on unlicensed operation of an AIV and that the Secretary brought an enforcement action against Wang only because she also had a broker's

license, thereby providing the Secretary with a basis for asserting jurisdiction over Wang. (FAC ¶ 31). That allegation itself identifies the rational basis for the Secretary's decision to prosecute Wang, and not individuals over whom he has no jurisdiction.

Because the Secretary has no jurisdiction over the Village Voice or AOL (neither of which have real estate brokers' licenses), the "similarly-situated" purported AIVs identified by the Plaintiffs are not in fact similarly situated. For this reason, the Plaintiffs cannot satisfy the second element of the test for selective prosecution, as it is entirely rational to choose to prosecute those over whom one has jurisdiction and not prosecute those over whom one lacks jurisdiction. In short, as a matter of law, such enforcement does not violate the Equal Protection Clause, so Plaintiffs' third cause of action is dismissed. *See New York State Motor Truck Ass'n v. Pataki*, No. 03 Civ. 2386(GBD), 2004 WL 2937803, at *10 (S.D.N.Y. December 17, 2004).

■■■ Further, as discussed above, the Village Voice and AOL are not similarly-situated to Plaintiffs in other ways as well. AOL is in the business of selling internet service, and the Village Voice (and its web equivalent) are newspapers of general circulation. In addition, it appears that the Village Voice does not charge for access to its online listings. *See http://villagevoice. com/realestate/.*[2]

For all of these reasons, Plaintiffs' third cause of action is dismissed.

### The Substantive Due Process Claim Is Dismissed

■■■ The Plaintiffs have alleged in their fourth cause of action that "defendants[']

use of an administrative proceeding to suspend Wang's real estate license denied her the opportunity to contest the constitutionality of the AIV law before the New York State courts." (FAC ¶ 73).

■■■ Although "a proceeding under article 78 is not the proper vehicle to test the constitutionality of legislative enactments," *Kovarsky v. Housing and Dev. Admin. of City of New York*, 31 N.Y.2d 184, 192, 335 N.Y.S.2d 383, 387–88, 286 N.E.2d 882 (1972), a court may, on request, convert such a claim to a request for a declaratory judgment, pursuant to CPLR 3001, and rule on the constitutional challenge. *See id.*

The Defendants did not prevent Wang from contesting the constitutionality of the AIV law. The Plaintiffs have contended that: (i) the Secretary's disciplinary action concerning Wang's real estate broker's license and recent appeal of ALJ Neal's decision that Wang should be issued an AIV license allegedly violate substantive due process (PCL Opp. at 20–21); (ii) that substantive due process prohibits the Secretary from seeking administrative sanctions against Wang because the Attorney General has not brought a criminal prosecution against her (*id.*); and that (iii) the Appellate Division held that Wang lacked standing to assert her constitutional claims concerning RPL § 446–c. Plaintiffs' first two contentions have nothing to do with their substantive due process cause of action, which focuses solely on the purported denial of access to state courts. (FAC ¶¶ 72–75). The contention that Wang argued that the Appellate Division had jurisdiction to address Wang's challenge to the constitutionality of the AIV law, is unavailing. Wang did not request that court to

---

2. The Court may take judicial notice of such internet material. *See Hotel Employees & Rest. Employees Union, Local 100 v. New York*

*Dep't of Parks & Recreation*, 311 F.3d 534, 549 (2d Cir.2002).

treat her claim as one seeking declaratory judgment and did not seek a declaratory judgment in state court. *See* PCL Opp. at 22. Moreover, the Appellate Division itself, not the Secretary, held that Wang lacked standing to challenge RPL § 446–c. As a matter of law Defendants did not deprive Wang of her day in court.

***The Claim Under The Privileges Or Immunities Clause Of The Fourteenth Amendment Is Dismissed***

■■■ The fifth cause of action has alleged that the application of the AIV law to the Plaintiffs violates the privileges or immunities clause of the Fourteenth Amendment, plainly lacks merit. That clause "has no application to a citizen of the State whose laws are complained of." *Bradwell v. Illinois*, 83 U.S. (16 Wall.) 130, 138, 21 L.Ed. 442 (1872); *see United Bldg. & Const. Trades Council v. Mayor & Council of Camden*, 465 U.S. 208, 217, 104 S.Ct. 1020, 79 L.Ed.2d 249 (1984) (citing *The Slaughter–House Cases*, 16 Wall. 36, 83 U.S. 36, 72, 21 L.Ed. 394 (1872); *Warden v. Pataki*, 35 F.Supp.2d 354, 362 n. 4 (S.D.N.Y.1999)). Because the Plaintiffs concede that they are New York residents (FAC ¶¶ 4–5), they cannot maintain a claim under the privileges or immunities clause. In addition, PCL cannot maintain a claim under that clause because it does not protect the putative rights of corporations. *See Asbury Hosp. v. Cass County*, 326 U.S. 207, 210–11, 66 S.Ct. 61, 90 L.Ed. 6 (1945).

■■■ In responding to the Defendants, the Plaintiffs contend that their fifth cause of action is meant to state a claim for relief for purported violations of 42 U.S.C. § 1983. However, section 1983 creates no rights, but rather is merely a procedural vehicle for enforcing existing federal constitutional or statutory rights. *See Sykes v. James*, 13 F.3d 515, 519 (2d Cir.1993) (citing *City of Oklahoma City v. Tuttle*,

471 U.S. 808, 816, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)).

■■■ The Plaintiffs attempt to recast this claim as one concerning "occupational liberty," *see* PCL Opp. at 23–24. The "liberty component of the Fourteenth Amendment's Due Process Clause includes some generalized due process right to choose one's field of private employment," but that right is "subject to reasonable government regulation." *Conn v. Gabbert*, 526 U.S. 286, 291–92, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999). As held above and as set forth in Defendants' moving memorandum, it is reasonable for the State to require licenses to practice a profession, to impose financial responsibility and similar requirements on licensed professionals, and to discipline licensees. Thus, even if the Plaintiffs are considered to have pleaded an "occupational liberty" claim, such a claim is dismissed as a matter of law.

It is so ordered.